701 So.2d 1280 (1997)
Margarette McCARROLL
v.
Donald McCARROLL.
No. 96-C-2700.
Supreme Court of Louisiana.
October 21, 1997.
*1281 Lila T. Hogan, Hogan & Hogan, Hammond, Harry A. Johnson, III, Phelps Dunbar, Shreveport, for Applicant.
Reginald J. McIntyre, Hammond, for Respondent.
KNOLL, Justice.
Even though lesion in an extrajudicial partition is the setting for this community property litigation, the central issue before us concerns the assessment of fair rental value for a spouse's use of the family residence. La.R.S. 9:374(C).[1] Plaintiff, Margarette McCarroll, seeks to rescind an extrajudicial partition of community property on account of lesion under La.Civ.Code art. 814.[2] The lower courts found the partition was not lesionary because plaintiff had received the exclusive use of the community home for the years leading up to and following the partition, and that the rental value of the family home should be counted as consideration received by plaintiff in the partition. McCarroll v. McCarroll, 95-1972 (La.App. 1 Cir. 6/28/96), 680 So.2d 681. There is a split among the circuits over the assessment of fair rental value of the family residence pending termination of the marriage or partition of the community property. We granted writs to determine whether the rental value of the family home should have been assessed against Mrs. McCarroll for purposes of determining whether the partition was lesionary. McCarroll v. McCarroll, 96-2700 (La.1/24/97), 686 So.2d 852. Our treatment of this issue will resolve the conflict among the circuits.
Finding that the fair rental value should not have been assessed against Mrs. McCarroll to the extent employed, we reverse the rulings of the lower courts, find that the partition was lesionary under La.Civ.Code art. 814, and remand for a judicial partition of the community assets.

FACTS
Margarette McCarroll and Donald McCarroll were married on July 25, 1958. The McCarrolls were legally separated on November 16, 1976, and after a period of reconciliation in 1977, a judgment of divorce was entered in favor of Mrs. McCarroll on January 28, 1980. At the time of their divorce, one of their children was over the age of eighteen and two were still minors, living at home. Partition of the community property *1282 was discussed by the parties, and Mr. McCarroll attempted to have a written settlement executed on several occasions. However, the community property regime which existed between the parties during their eighteen-year marriage was not partitioned until March 3, 1990, when the parties entered into a community property settlement. The settlement, which was in the form of an authentic act, stated:
COMMUNITY PROPERTY SETTLEMENT BETWEEN DONALD McCARROLL AND MARGUERITE MARTIN McCARROLL
BEFORE ME, the undersigned authority, personally came and appeared DONALD McCARROLL and MARGUERITE MARTIN McCARROLL, who being first sworn, deposed and said they were formerly married, and said marriage ended in divorce in the Twenty First Judicial District Court for the Parish of Tangipahoa, State of Louisiana, on the 28th day of January, 1980, and that they do by these presents enter into the following settlement of the community of acquets and gains which formerly existed between the parties.
DONALD McCARROLL takes as his part, and MARGUERITE MARTIN McCARROLL does hereby transfer to DONALD McCARROLL, all of her right, title and interest in and to:
1. A lot 218 feet on the North side of Highway 190 by a depth of 131 feet in Section 23, Township 6 South, Range 6 East, being the property purchased from Holland heirs in COB 182, Page 332 of the Livingston Parish Clerk and Recorder's Office.
2. Any and all movable property in the name of DONALD McCARROLL or in his possession that was acquired during the community of acquets and gains.
MARGUERITE MARTIN McCARROLL further acknowledges that she has received the sum of $5,000.00 in cash.
MARGUERITE MARTIN McCARROLL takes as her part, and DONALD McCARROLL does hereby transfer to MARGUERITE MARTIN McCARROLL, in addition to the $5,000 previously mentioned, all right, title and interest in and to Any and all movable property in the name of MARGUERITE MARTIN McCARROLL or in her possession.
The remaining property belonging to the parties shall be held in indivision.
Three months after this agreement was signed, on July 31, 1990, Donald McCarroll retired from his job at Chevron after nearly 35 years. Upon his retirement, he received a substantial retirement package and profitsharing/stock benefit plan, having a combined value in excess of $300,000. The record reflects that Mrs. McCarroll did not know the value of the retirement package at the time she signed the settlement agreement. She later discovered this information after Mr. McCarroll's Paine Weber statement was mistakenly mailed to her home.[3]
On June 10, 1992, Mrs. McCarroll filed a petition to partition the community property, including the family home and the community portion of Donald McCarroll's retirement benefits. Donald McCarroll answered the petition, asserting that the retirement benefits had already been partitioned pursuant to *1283 the March 3, 1990, settlement executed by the parties. Donald argued that since the retirement benefits were "movable property in his name and possession," they were partitioned in the settlement agreement. Mrs. McCarroll amended her petition, seeking to rescind the March 3, 1990 settlement based on lesion.
The trial court bifurcated the issue of lesion from the actual partition of the community property. Initially the trial court noted that the March 3, 1990, settlement was ambiguous as to whether the parties intended to include the Chevron retirement package in the settlement. A hearing was held to determine the intent of the parties as to Mr. McCarroll's retirement.
At the hearing, Mr. McCarroll's brother, Wendall McCarroll, and his sister, Joan Perilloux, testified that they each had loaned Mr. McCarroll $2,500 in 1979 so that Mr. McCarroll could settle the community property. Mrs. Perilloux testified that she met Mr. McCarroll and Mrs. McCarroll at her mother's house in 1979, and that in a verbal agreement, Mrs. McCarroll exchanged her rights to the Chevron retirement in exchange for $5,000, the furniture in the house, for the use of the family residence until the children were grown. Wendall McCarroll acknowledged being at the house when the agreement was made, but stated that he did not know the terms of the agreement. Although Margarette McCarroll denied that this 1979 transaction took place, shortly thereafter Mr. McCarroll moved out of and Mrs. McCarroll moved into the family home with two of the children.
Hobart Pardue, the attorney who prepared the March 3, 1990, settlement agreement, testified that he had explained to both parties that the settlement would include "monies, claims, or anything they might have," but that he was not informed of the existence of the retirement benefits. Mr. Pardue also testified that it was his understanding that Mrs. McCarroll would have use of the family home.
The trial court concluded that the parties intended to partition all community property save and except the family home, and that the Chevron retirement benefits had been included in the March 3, 1990 settlement.[4] The trial court further concluded that pursuant to the verbal agreement between the parties, Mrs. McCarroll was to receive the exclusive use and possession of the family home.
A second hearing was held on the issue of lesion of the settlement agreement. Evidence was adduced as to the value of the community property described in the settlement, including the building in Livingston Parish and the family furniture. Professor Dian Tooley Arruebarrena testified as an expert witness in the area of community property, specifically with respect to the valuation of the community portion of the retirement and benefit plans. Several real estate appraisals of the family home were introduced, and an appraiser for Donald McCarroll testified as to the fair rental value of the family home.
After taking the case under advisement, the trial court issued a judgment on March 13, 1995. In its written reasons, the trial court held that the March 3, 1990, agreement was not lesionary and dismissed Mrs. McCarroll's motion to rescind, stating:
This court finds that the defendant has established by a preponderance of the evidence that the fair rental value of the home was $425.00 per month.
* * * * * *
This court further found that plaintiff, through parole evidence allowed by both parties as additional consideration for the agreement, had actual exclusive use and possession of the family home.
* * * * * *
Assuming arguendo that the figures submitted in her "Lesion Analysis" are correct, the figures themselves dispense with plaintiff's argument. Plaintiff states that "[i]f she received less than [$44,028], it's lesionary." (See plaintiff's Lesion Analysis). Plaintiff states that she received $7,000 in cash and furniture, but makes no *1284 mention of the in-kind value she received regarding the exclusive use of the family home pursuant to the March 3, 1990 agreement.
The defendant in this matter has established by a preponderance of evidence that the fair rental value of the home is $425.00 per month. Reducing this amount by onehalf, this court finds that the plaintiff, over the 190 months of her exclusive use and possession of the home, received a total of $40,375 in rental value. In total, plaintiff received $47,375, which is above the $47,028 lesionary threshold figure cited by plaintiff.[5]
(Footnote added).
The court of appeal affirmed the judgment of the trial court, and found no manifest error in the trial court's ruling that under the verbal agreement in 1979, Mr. McCarroll's benefits were included in the settlement, and that as additional consideration, Mrs. McCarroll received use and possession of the family home. McCarroll, 680 So.2d 681.
The court of appeal cited the jurisprudence of its own circuit, holding that "when there is no evidence of court ordered rent or an agreement between the parties, the occupying spouse is not liable for rent." McElwee v. McElwee, 93-1010 (La.App. 1 Cir. 8/17/94), 649 So.2d 975; Wochomurka v. Wochomurka, 552 So.2d 405 (La.App. 1 Cir. 1989). Nevertheless, it distinguished the case sub judice from prior rental payment cases. The court of appeal held that La.R.S. 9:374(C) did not prevent the assessment of rental value in determining the issue of lesion, since the use of the family home was Mrs. McCarroll's additional consideration for the subsequent written property settlement rather than an asset to be partitioned. The court stated:
The present case is distinguishable from McElwee and Wochomurka. In those cases, there was no evidence that the occupying spouse gave any consideration for the use and occupancy of the community home. Herein, the record reflects that at the time she began occupying the home, Mrs. McCarroll verbally agreed that in exchange for the retirement and profit sharing benefits, she would receive exclusive use of the community home. We note that because La.R.S. 9:374(C) does not require that rental agreements between the spouses be in writing, a verbal agreement can support a trial court's award of rental payments. The record in this case contains evidence of a verbal agreement between the parties wherein they contemplated an exchange of the benefits for the use of the community home. Accordingly, we find that the trial judge did not err in including rental payments as part of Mrs. McCarroll's consideration for the subsequent written community property partition agreement which divided the retirement and profit sharing benefits.
McCarroll, 680 So.2d at 688-89.
Although it noted that Mrs. McCarroll had occupied the family home for only 121 months on the date the written settlement was executed, and for only 182 months when judgment was rendered, the court held that the trial court did not err in selecting a term of 190 months for Mrs. McCarroll's occupancy. The court of appeal reasoned that the settlement agreement "contemplated ALL future use of the community home by Mrs. McCarroll." McCarroll, 680 So.2d at 688. The court of appeal held that the inclusion of eight additional months of occupancy following the issuance of judgment reflected the reasonable time limitation for partitioning the family home. Finally, the court conducted the following lesion analysis:
The record establishes the following values for the partitioned community property:

1. Albany propertyone-half owned by
 the McCarroll's 30,000
2. Chevron retirement 42,437
3. Chevron profit sharing 42,972
4. Movables in Mrs. McCarroll's
 possession 2,000
5. $5,000 cash 5,000
Total Community Property Contained in 122,409
 Partition

If Mrs. McCarroll did not receive threefourths of her one-half of the divided community property, the partition agreement *1285 is lesionary. La.Civ.Code art. 814. Onehalf of the divided community property is $61,205.00. Three-fourths of this amount is $45,903.00. Mrs. McCarroll received $7,000.00 in cash and movables. As additional consideration for the agreement, she received exclusive use of the family home for 190 months. If the fair rental value of $425.00 per month is reduced by one-half, Mrs. McCarroll received, as additional consideration, $40,375.00 in rental value. In total, Mrs. McCarroll received $47,375.00, which is over the three-fourths lesionary figure.
Accordingly, we find no error in the trial judge's conclusion that the partition agreement was not lesionary.
McCarroll, 680 So.2d at 689. (Footnotes omitted).
Mrs. McCarroll assigns and briefs the following errors: 1) The court of appeal erred in assessing the rental value for Margarette McCarroll's use of the family home; 2) The court of appeal erred in its lesion analysis; 3) The court of appeal erred in failing to partition all the community property.

RESCISSION OF PARTITION FOR LESION
The rescission of an extrajudicial partition for lesion is governed by La.Civ.Code art. 814, which provides:
An extrajudicial partition may be rescinded on account of lesion if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received.[6]
(Footnote added).
The proper method of establishing lesion beyond one-fourth is twofold: (1) the community property's true value (net value) must be ascertained; and (2) it must then be determined from the property acquired whether a party received value less than ¾ of ½ share of the true value of the property partitioned. Oberfell v. Oberfell, 516 So.2d 424 (La.App. 1 Cir. 1987); Cowling v. Cowling, 486 So.2d 1060 (La.App. 2 Cir.1986); Beatty v. Vining, 147 So.2d 37 (La.App. 2 Cir.1962). The value of the property exchanged is determined as of the date the exchange was executed. Ozane v. Ozane, 392 So.2d 774 (La.App. 3 Cir.1980); Beatty v. Vining, supra. See also, La.Civ.Code art. 2590; La.Civ.Code art. 814 comment (b).
Our analysis begins with an inventory of the property exchanged in the partition. The settlement agreement plainly states that three elements that had once been community property were partitioned by the agreement: 1) the property in Livingston Parish in the town of Albany, acquired during the community, was allocated to Mr. McCarroll; 2) movable property in Mr. McCarroll's name or possession that was acquired during the community was allocated to Mr. McCarroll; 3) movable property in Mrs. McCarroll's name or possession that was acquired during the community was allocated to Mrs. McCarroll. In addition, Mrs. McCarroll acknowledged receipt of $5,000.
The settlement agreement provided that any remaining property would continue to be held by the parties in indivision. As noted by the trial court, an ambiguity was raised by the language of the agreement: should the community portion of the retirement benefits, as incorporeal movables, be allocated to Mr. McCarroll under the terms of the agreement; or did the parties contemplate a future partition of the retirement benefits, as evidenced by the fact that they were unmentioned in the agreement?
The trial court held a hearing on this issue and determined that the parol evidence preponderated in favor of the inclusion of the retirement benefits in the settlement agreement. The trial court also determined that the inclusion of the benefits was explained by a side agreement, made by the parties over ten years earlier, in which Mrs. McCarroll agreed to relinquish any right she had to the community in exchange for the exclusive use *1286 of the family home. The trial court therefore determined that the value received by Mrs. McCarroll in using the family home should be considered as having been a part of the settlement agreement in addition to the $5,000 acknowledged in the settlement. The inclusion of the rental value as consideration is the linchpin issue of the case sub judice, since without the rental value the settlement agreement is obviously and grossly lesionary.

AGREEMENT AS TO RETIREMENT
Before we consider the arguments of counsel, we find it necessary to revisit the facts regarding the agreement that the McCarrolls had about Mr. McCarroll's retirement, since we find that the lower courts manifestly erred in their appreciation of the facts. It must be remembered that the written instrument that the McCarrolls formally signed in 1990 actually memorialized events that transpired in 1979, approximately eleven years earlier.
Although the trial court recognized the 1990 written agreement as an authentic act, it allowed testimony of Margarette McCarroll, Donald McCarroll, his brother, Wendall, and his sister, Joan, to supplement the terms of the written agreement beyond those contained in the instrument. In particular, the trial court allowed this testimony to resolve the ambiguity in the settlement with respect to the inclusion of the Chevron benefits as "movable property in the name of Donald McCarroll or in his possession."
La.Civ.Code art. 1848 states:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
Although parol evidence is inadmissible to vary the terms of a written contract, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087 (La.1981). It is equally well established that the true cause or consideration for a contract may be shown by parol evidence, even though the true consideration is different from that which is recited in the written act. Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943); Love v. Dedon, 239 La. 109, 118 So.2d 122 (1960); Hogan v. McKeithen, 527 So.2d 982 (La.App. 2 Cir.1988).[7]
There is no doubt that the trial court properly admitted the testimony of the various witnesses to resolve the inclusion of the Chevron retirement benefits as "movable property in the name of Donald McCarroll." Through this testimony an ambiguity was resolved.
It is, however, with some hesitancy that we also find that the trial court properly considered that the parties addressed Mrs. McCarroll's use of the family home. Although such use is not mentioned within the four corners of the document, the conduct of the parties in 1979 provides the authenticating character that justifies our conclusion that the trial court properly relied upon this additional testimony. The facts show that even though Mrs. McCarroll denied that this transaction took place in 1979, shortly thereafter Mr. McCarroll moved out of the family residence and Mrs. McCarroll and her two minor children moved into the home. Simply put, the actions of the parties speak louder than words. Thus, we find that the trial court correctly relied upon this additional evidence to show that the parties intended to include this use as further consideration for the inclusion of Mr. McCarroll's retirement benefits.
*1287 Notwithstanding this determination, we find that the trial court was clearly wrong in its conclusion with regard to the term of the agreement. When the trial court performed its lesion analysis, it determined, without any elaboration, that Mrs. McCarroll had 190 months of exclusive use and possession of the family home. It cannot be denied that as of the time that this matter was tried Mrs. McCarroll had lived in the family residence for 178 months. Nevertheless, there is no testimony that would allow one to conclude that Mrs. McCarroll would have the exclusive use of the home for that long. To the contrary, Joan Perilloux and Mr. McCarroll testified that Mrs. McCarroll exchanged her rights to the Chevron retirement in exchange for $5,000, the furniture in the house, and the use of the family residence until the children were eighteen years of age. Even though the record does not establish the exact birth date of Allison, the youngest child, the testimony showed in numerous places that she celebrated her eighteenth birthday in 1984. Thus, we find that the testimony establishes without contradiction that Mrs. McCarroll's exclusive use of the family residence ended in 1984. Since then Mrs. McCarroll lived in the family residence as a co-owner, subject to the other co-owner's demand, at any time, to cease exclusive use of the residence and to partition the property. La.Civ.Code arts. 802, 807. Accordingly, Mrs. McCarroll's use of the family residence after 1984 was precarious, at best, and clearly not contemplated by the parties in 1979. Therefore, we find that the trial court was manifestly erroneous in concluding otherwise.
With the inclusion of this corrected understanding of the agreement, we will proceed with our analysis of the other issues presented.

IN KIND VALUE
The rescission of a partition for lesion naturally contemplates that assets of one kind or another will be divided between the parties and that those assets would naturally have value. In an ordinary case, the value of these assets is determined, and the issue of whether the claimant spouse received a ¾ share is mathematically decided. The case sub judice is noteworthy, since the agreement between the spouses that one will not oppose the other's exclusive use of the coowned property for a limited time is unique and has not been addressed in the jurisprudence. In reality, this agreement may best be described as an agreement to delay the partition of the family home until a later date.[8] Accordingly, we must determine the propriety of adding the value of this agreement to the other consideration received in the settlement.
The courts of this state have recognized that the decision of one spouse to explicitly waive his or her rights in a community property settlement may be considered as value to the other in determining whether a partition is lesionary. In its lesion analysis in King v. King, 493 So.2d 679 (La.App. 2 Cir.), writ denied, 497 So.2d 316 (La.1986), the court of appeal considered the effect of a portion of the community property agreement between the parties whereby Mrs. King agreed to partially waive alimony. The court stated:
A very substantial benefit which the plaintiff received in this settlement was the reduced and eliminated alimony rights surrendered by the defendant. She agreed that she would never seek an increase in her alimony above the amount provided for in the agreement and further agreed the alimony would forever terminate upon plaintiff's retirement. After plaintiff's retirement she would have no further claim *1288 to alimony. She would then be relegated to her portion of the retirement benefits which she received under the community property law at the time of the dissolution of the community. The rights to alimony surrendered by the defendant in this partition agreement are valuable benefits received by the plaintiff. In order to determine if the agreement was lesionary the value of the alimony rights contractually terminated must be first determined and this value added to the property received by the plaintiff in the partition so it can then be determined if the plaintiff in fact received less than ¾ of ½ of the property included within the partition. The waiver of the alimony by the plaintiff has an equalizing effect upon the amount of value she received in property from the partition agreement.
King, 493 So.2d at 686. (Emphasis added). See also Steadman v. Steadman, 423 So.2d 710 (La.App. 3 Cir.1982), writ den'd, 429 So.2d 158 (La.1983).
We agree with the holding in King that a waiver of a right that benefits one spouse to the detriment of the other may be considered as value to the beneficiary for purposes of lesion. It is as if an equalizing sum of money had been exchanged between the parties to the partition, or as if one party had agreed to assume a community obligation. Therefore, it is from this perspective that we will analyze the value of the use of the family home as consideration received by Mrs. McCarroll for purposes of determining whether the March 3, 1990, agreement was lesionary.

La.R.S. 9:374(C)
La.R.S. 9:374(C) provides for the award of rental payments for a spouse's occupancy of the family residence pending partition of the community:
A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provision of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.

(Emphasis added).
The circuit courts of appeal of this state have differing views on the issue of whether an assessment of rent may be made retroactively for a spouse's occupation of the family home pending partition of the community property. In interpreting the above statute, the First and Second Circuit Courts of Appeal have relied upon principles of co-ownership in holding that a spouse who has exclusive use of the matrimonial domicile is not liable to the other spouse for rental payments unless ordered to pay rental by the trial court or agreed by the parties at the time of occupancy. Wochomurka, 552 So.2d 405, disallowed a retroactive award of rent to a co-owning spouse. The court stated:
[T]he Louisiana legislature intended that a spouse who is awarded the use and occupancy of the marital home pending the judicial partition, shall not be liable to the other spouse for rental payments on the home unless ordered to pay by the trial court at the time of the award of use and occupancy.

* * * * * *
The general rule of law that a co-owner has the right to use the common property without the payment of rent is controlling in this case.
Wochomurka, 552 So.2d at 406. See also, McElwee v. McElwee, 93-1010 (La.App. 1 Cir. 8/17/94), 649 So.2d 975; Bolden v. Bolden, 524 So.2d 10 (La.App. 1 Cir.1988); Williams v. Williams, 509 So.2d 77 (La.App. 1 Cir.1987).
The Second Circuit Court of Appeal, in McConathy v. McConathy, 25,542 (La.App. 2 Cir. 2/23/94), 632 So.2d 1200, amplified the holding in Wochomurka, stating:
Once the community of acquets and gains has been dissolved by separation, the spouses become co-owners, or owners in indivision of the marital home. As such, the spouses are entitled to the use, enjoyment, and disposition of the property. LSA-C.C. Arts. 477 and 480. A corollary right permits the use and occupancy of the *1289 property by the co-owner without the payment of rent.
Pursuant to LSA-R.S. 9:374, the trial court may order rental payments on the family home. However, the order must also be made at the time of the award of use and occupancy. This court reasoned in the Jones case that:
We do not believe the legislature intended to give a trial court blanket discretion to order rental payments at the time of partition, which might be years after the use and occupancy award.
McConathy, 632 So.2d at 1207-08, (citations omitted), citing Jones v. Jones, 605 So.2d 689, 693 (La.App. 2 Cir.1992), writ den'd, 607 So.2d 571 (La.1992).
The Third and Fourth and Fifth Circuit Courts of Appeal interpret La.R.S. 9:374(C) as an authorization for the trial courts to award rental value at any time, including retroactively. In Nichols v. Nichols, 95-1290 (La.App. 3 Cir. 3/20/96), 671 So.2d 1069, the Third Circuit Court of Appeal affirmed the retroactive assessment of 112 months rent, stating:
Consistently this court has ruled that, under La.R.S. 9:374(C), the decision to award rent to a non-occupant spouse rests soundly within the trial court's discretion. Rozier v. Rozier, 583 So.2d 87 (La.App. 3 Cir. 1991); LeBlanc v. LeBlanc, 490 So.2d 763 (La.App. 3 Cir.), writ denied, 494 So.2d 332 (La.1986). Moreover, where the facts so warrant, the trial court enjoys vast discretion to devise rental assessments under La.R.S. 9:374(C).
Nichols, 671 So.2d at 1072.
This Court previously addressed this issue in a per curiam opinion, Bodenheimer v. Freitag, 94-2573 (La.1/6/95), 651 So.2d 251, but failed to resolve the split in the circuits.[9] Finding the issue now squarely before us, we hold that rental payments may not be retroactively assessed under La.R.S. 9:374(C) unless otherwise agreed by the spouses or ordered by the court.
After carefully scrutinizing the appellate court decisions, we find that the First and Second Circuits were correct in their application of principles of co-ownership in making their determination. La.Civ.Code art. 2369.1 provides, in pertinent part:
After termination of the community property regime, the provisions governing coownership apply to former community property, unless otherwise provided by law or by juridical act.
The use and management of a thing held in indivision is determined by agreement of all the co-owners. La.Civ.Code art. 801. A co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it. La.Civ.Code art. 802. Nevertheless, it is well established that a co-owner need not pay rent to another coowner for his exclusive use of the co-owned property. In Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (La.1955), this Court stated:
This claim cannot be sanctioned, for defendant was a co-owner of the property and was entitled, as such, to occupy it without becoming liable to plaintiffs for rent. Becnel v. Becnel, 23 La.Ann. 150; Balfour's Heirs v. Balfour, 33 La.Ann. 297; Toler v. Bunch, 34 La.Ann. 997 and Perez v. Guitard, 14 Orleans App. 191. In determining the amount due and recoverable by a coowner out of possession from his co-owner in possession, a clear distinction should be drawn between the personal occupancy, use and enjoyment of property by the possessor and the rents and revenues derived by him therefrom, either from a lease or by his own industry or exploitation. As to the latter, he must account to his co-owner for all rents and revenues he has received because, in obtaining these fruits, he acts not only for himself but also as the agent of his co-owner for the latter's just proportion.
* * * * * *
On the other hand, the co-owner who takes possession of the common property does not have to account to his coproprietor, because the right of occupancy is vested in *1290 him by virtue of his ownership. Article 494, Civil Code. This right of co-owners to possession of the property being equal and coextensive, neither becomes indebted to the other for his personal occupancy and enjoyment, save, probably, that a co-owner, who has been deprived of the right of possession by reason of his co-owner's exclusive occupancy, may claim damages from the date upon which he has demanded occupancy and has been refused by the possessor. But, even in these instances, the co-owner in possession cannot be enjoined from occupying the property or cultivating it. The remedy of the co-owner out of possession is, as stated in Moreira v. Schwan, 113 La. 643, 37 So. 542, 543, `* * * by suit for a partition and settlement of accounts, or for a division of profits, if any.'
Juneau, 82 So.2d at 695-96. (Footnotes omitted).
Under the principles enunciated in Juneau, a co-owner in exclusive possession may be liable for rent, but only beginning on the date another co-owner has demanded occupancy and has been refused. This underlying principle amply supports the requirement that for the assessment of rent under La.R.S. 9:374(C), there must be an agreement between the spouses or a court order for rent contemporaneous with the award of occupancy.
If the parties cannot reach an agreement, either spouse may petition the court for the occupancy of the family home under La.Civ. Code art. 105, and the determination of occupancy and rent is governed by La.R.S. 9:374. At the time occupancy is awarded under La.R.S. 9:374(B), the trial court has the opportunity to weigh the arguments of both spouses on the rent issue at a contradictory hearing.[10] La.R.S. 9:374(B) provides that the trial court shall consider the relative economic status of the parties, the needs of the children, and the effect of the award of the occupancy on alimony and child support. La. R.S. 9:374, when read as a whole, contemplates that any award of rent shall be made in conjunction with the determination of occupancy and in light of the factors in La.R.S. 9:374(B).
Public policy also weighs heavily against the retroactive award of rent under La.R.S. 9:374(C). As is plainly illustrated by the case sub judice, when the community is not partitioned for many years, the retroactive assessment of rent is extremely prejudicial to the occupying spouse. Such retroactive assessment deprives the occupying spouse of the ability to make an informed and meaningful decision regarding his or her finances and housing budget. There is no corollary prejudice to the non-occupying spouse under this interpretation of the statute, since that spouse has the ability to invoke a court proceeding to determine occupancy and rent at any time. La.Civ.Code art. 105.
In addressing the propriety of the trial court's ruling, the court of appeal noted that under the jurisprudence of its own circuit, where there is no prior agreement between the parties, the occupying spouse cannot be retroactively assessed rent for the occupancy of the family home. Nevertheless, the court of appeal distinguished the instant case from the prior cases since it found that the record reflected that there was a prior agreement between the parties with respect to rent. The court of appeal found that Mrs. McCarroll's agreement to waive her rights to the community portion of the retirement benefits constituted a verbal agreement between the parties that justified the trial court's award of retroactive rent under La.R.S. *1291 9:374(C). It therefore affirmed the trial court's determination that the rental value should be included in the lesion analysis. We agree, but as found herein above, the agreement among the parties regarding Mrs. McCarroll's exclusive use of the family residence did not extend beyond 1984. Thus, finding that there was an agreement between the parties whereby Mrs. McCarroll waived her rights to the benefits, and Mr. McCarroll agreed to her occupancy of the family home until the children were eighteen years of age, we find that agreement could have been properly considered as in-kind value for purposes of determining whether the March 3, 1990, agreement was lesionary.

CONCLUSION
Utilizing the figures accepted by the appellate court and reducing Mrs. McCarroll's exclusive use of the family residence to approximately seventy months as opposed to the 190 found by the trial court), there is no question that the March 3, 1990, community property settlement was lesionary. Mrs. McCarroll received only $5,000 cash,[11] movables in her possession valued at $2,000, and rental value for approximately 70 month's use of the family residence.[12] We therefore reverse the findings of the lower courts that the settlement agreement was not lesionary. However, because of our inability to specifically ascertain the date that the last McCarroll child reached the age of eighteen and because the trial court made no definite findings of fact with the respect to the value of some elements of the community, we therefore remand this case to the district court to judicially partition the community property.

DECREE
For the foregoing reasons, we reverse the judgment of the lower courts. The March 3, 1990, community property settlement executed by Donald McCarroll and Margarette McCarroll was lesionary. We therefore grant Margarette McCarroll's amended petition, and rescind the March 3, 1990, settlement. This case is remanded to the district court for further proceedings consistent with the foregoing opinion.
REVERSED AND REMANDED.
LEMMON, J., not on panel. Rule IV, Part 2, §3.
NOTES
[1] La.R.S. 9:374(C) provides:

A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provision of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.
[2] La.Civ.Code art. 814 states that, "An extrajudicial partition may be rescinded on account of lesion if the value of the part received by a coowner is less by more than one-fourth of the fair market value of the portion he should have received."
[3] Although the issue was not raised in this litigation and we need not reach it because of our disposition of this case on lesionary grounds, we would be remiss if we did not at least mention our decision in Pitre v. Pitre, 247 La. 594, 172 So.2d 693 (1965), at this juncture. In Pitre, we recognized the fiduciary relationship between husband and wife, and held that at the termination of marriage the spouses must make a full disclosure of all pertinent facts regarding the community assets and liabilities. Flowing from this fiduciary relationship there is a general duty between spouses to disclose community assets and their value. See Oliphint v. Oliphint, 219 La. 781, 54 So.2d 18 (1951); Lee v. Lee, 214 La. 434, 38 So.2d 66 (1948); Gay v. Martinolich, 271 So.2d 689 (La.App. 1 Cir. 1972); Troxler v. Troxler, 255 So.2d 240 (La.App. 1 Cir. 1971); Smith v. Smith, 117 So.2d 670 (La.App. 2 Cir. 1960); Luquette v. Floyd, 147 So.2d 894 (La.App. 3 Cir. 1962), writ den'd, 244 La. 119, 150 So.2d 585 (La. 1963).

In the present case, although Mr. McCarroll may have only had a sketchy idea of the value of his retirement in 1979, he had a much clearer understanding of that value in 1990 when he and Mrs. McCarroll signed the partition agreement just three months before Mr. McCarroll retired from Chevron. Based upon his fiduciary relationship with Mrs. McCarroll, he had a duty to disclose the value of his retirement, since at least a portion of it was a community asset.
[4] In this court, Mrs. McCarroll has not contested the trial court's finding in this regard. She states that there was at least some basis for the trial court to so conclude.
[5] Although the trial court determined that Mrs. McCarroll's exclusive occupancy began in January, 1980, the court gave no reasons for the selection of the term of 190 months. Had the court selected a term of only two fewer months (188), the agreement would have been lesionary.
[6] As noted in the 1990 revision comments to Art. 814, the revision of this article on January 1, 1991 did not effect a change in the law. The immediate predecessor to Art. 814 was Art. 1398 of the Civil code of 1870, which stated:

They may even be rescinded, on account of lesion; and, as equality is the base of partitions, it suffices to cause the rescission, that such lesion be of more than one-fourth part of the true value of the property.
[7] There is another line of cases which further holds that testimonial evidence may also be admitted to show that the written agreement was incomplete and was not intended by the parties to exhibit the entire agreement. Gulf States Finance Corp. v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36 (1965); Scafidi v. Johnson, 420 So.2d 1113 (La. 1982); Guilbeau v. C & D Reprographics-Lafayette, 568 So.2d 206 (La.App. 3 Cir.), writ den'd, 571 So.2d 653 (La. 1990).
[8] We note that La.Civ.Code art. 2369.8 was enacted effective January 1, 1996, which states:

A spouse has the right to demand partition of former community property at any time. A contrary agreement is absolutely null.
If the spouses are unable to agree on the partition, either spouse may demand judicial partition which shall be conducted in accordance with R.S. 9:2801.
It further provides that, "Nothing in this act shall be construed ... to invalidate any act or transaction made prior to January 1, 1996, by a spouse or former spouse according to the law in force at the time of the act or transaction." We leave for another day the decision of whether an agreement as we have before us today would be valid under La.Civ.Code art. 2369.8, if it had been agreed upon after January 1, 1996.
[9] Without elaboration, we said that "Diane Freitag is not entitled to rent from her former husband, Gregory L. Bodenheimer...." Bodenheimer, 651 So.2d at 251.
[10] La.R.S. 9:374(B) provides:

B. When the family residence is community property, after the filing of a petition for divorce or in conjunction therewith, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence and use of community movables or immovables to either of the spouses pending further order of the court. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community movables or immovables to the spouse in accordance with the best interest of the family. The court shall consider the granting of the occupancy of the family home and the use of community movables or immovables in awarding alimony or child support.
[11] In passing, we note that the appellate court erroneously included the $5,000 as a community asset. The record clearly establishes that this sum of money was given to Mr. McCarroll by his brother and sister, and that he then gave it to Mrs. McCarroll. As such, it is clear that the $5,000 was not a community asset.
[12] Since we do not know the exact date of Allison's eighteenth birthday, we have approximated the in-kind value through 1984. On remand, the trial court can make an exact determination of this figure, after Allison's birth date is ascertained.