762 So.2d 271 (2000)
Austin J. RICHARD
v.
Peggy Lamb RICHARD.
No. 00-CA-08.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2000.
Opinion Granting Rehearing July 12, 2000.
*272 James G. Derbes, New Orleans, Louisiana, Counsel for Defendant-Appellee.
Joel Levy, Marrero, Louisiana, Counsel for Plaintiff-Appellant.
Court Composed of Judges JAMES L. CANNELLA and CLARENCE E. McMANUS, and THOMAS C. WICKER, Jr., Judge Pro Tempore.
McMANUS, Judge.
In this matter we are asked to decide whether a spouse who resides in the family home pending partition of the community owes rent to the non-occupying spouse though neither use and occupancy nor rental payments have ever been included in any court order pending the partition. Appellant spouse is Peggy Richard, who was ordered to pay Appellee spouse, Austin Richard, the rent which he claims accrued during the period of time she occupied the family residence pending the parties' property settlement. However, because there was neither consent nor a timely order for such payments, we must vacate and reverse the belated "retroactive"order fixing rent as an item in the parties' community property judgment.

STATEMENT OF THE CASE
The instant matter originated with a petition for divorce filed by Austin on November 17th, 1989. Peggy answered the petition and filed a reconventional demand. Peggy's answer included a request for use and occupancy of the family home, and an order signed November 27th, 1989, set this matter, among several others, for hearing on March 20th, 1990. Austin answered the reconventional demand, and in his answer, stated that he had "no objection" to Peggy's use and occupancy of the home, as long as she was ordered to pay expenses related thereto. The hearing on the incidental matters did not take place, however, and a final Judgment of Divorce was signed May 1st, 1990. Though this judgment did address some matters incidental to the divorce, it did not include an order awarding Peggy the use and occupancy of the residence or otherwise disposing of its possession pending a property settlement between the couple.
A petition for judicial partition of community property was filed by Peggy in October of 1992. Austin's petition for partition was filed in March of 1993; attached to the petition was a sworn descriptive list which included the family home among the assets. Peggy filed an answer to Austin's petition in April of 1993, and attached to the answer her sworn descriptive list. On May 14th, 1993, Austin filed a Supplemental Petition for Settlement of the Community which included, for the first time, a demand for his share of the fair market rental value of the home for the months during which it had been occupied by Peggy, or, from the date of the original petition for divorce. Peggy filed an amended descriptive list in August of 1995.
Austin had not, at any time prior to the above date, asked that use and occupancy of the home be awarded to him or that he be awarded rental payments from Peggy pending the property settlement. Nor had Austin asked that his right to rent be "reserved," or that the rent payments be *273 used to set off mortgage payments owed by him to Peggy.
The matter was eventually set for trial before a special master, and though the findings of the special master are not in the record, Austin filed an objection to the report in July of 1998, citing as error, among several others, the master's refusal to award his claim for rental reimbursement.
Peggy filed a second amended descriptive list in September of 1998, and though there is no minute entry or order in the record fixing a date for such, a pre-trial conference was held on August 31st, 1998, setting the case for trial and limiting the scope of the trial to the issue of rental reimbursement due Austin.
The trial was held March 1st, 1999; the only testimony produced was relative to the rental value of the family home. At the conclusion of trial, the judge reserved ruling on the matter until a later date, or until he had reviewed memoranda submitted by the parties on the rental issue. On March 29th, 1999, the trial judge made an oral ruling granting Austin reimbursement for the rental value of the family home from the "date of the request" for such payments through September of 1998. The judgment, disposing of all community debts and assets, was signed July 22nd, 1999; the judgment specifically awarded Austin "One-half (½) rental value of residence from May 14, 1993 through September 1998 at $400.00 per month (Total 65 months @ $400.00 = $26,000.00)," or, $13,000.00.
Peggy's motion for appeal was filed on September 1st, 1999.
Peggy raises as error on appeal:
1. the trial court erred by granting Mr. Richard's claim for reimbursement for the rental value of the home;
2. the trial court's amount of rental assessment is contrary to the evidence.

FACTS
The facts underlying the issues raised in this appeal are not complicated. Though there was no testimony to indicate as much, pleadings do state that Peggy had occupied the former matrimonial domicile from the time the parties had originally physically separated.
Testimony regarding the rental value of the home was provided by each party. Annie Shugart, Austin's witness, who was not accepted as a real estate appraiser, was nevertheless allowed to testify to her own experience in sales or rental contracts for homes in the immediate neighborhood of the Richards' former family residence. Shugart testified that she had listed and sold, and rented, houses comparable to the Richards' in the neighborhood. She testified that though there were houses in the neighborhood renting for as high as $800.00 per month, necessary, and undone, repairs to the Richards' home would prevent them from getting such a high figure. Shugart testified that the Richards could possibly, if the house were "spruced up," get $600.00 per month.
Creshia Reynon, Peggy's witness, was accepted as a real estate appraiser, and testified that she had appraised the Richards' house. As Shugart had done, Reynon described fairly serious wear and tear evident in the residence but also indicated that there might be more than cosmetic problems with the house. She testified that the house had possibly suffered structural damage as it settled and that there was possible termite infestation. Reynon testified that the house could rent, "as is," for $300.00.
Regarding Peggy's use and occupancy of the house, the trial judge, in issuing his oral ruling, made the following finding: "[b]ased upon what took place, I believe that it was implied that [Peggy] was awarded use and occupancy" of the home pending the parties' property settlement.
In fixing the amount of rent per month, the trial judge compromised between the *274 "high end" and the "low end," and set the figure at $400.00 per month.

ASSIGNMENT OF ERROR NUMBER ONE
As her first assignment of error, Peggy argues that the trial judge was in error in awarding rent "retroactively" in Austin's favor since no award was made contemporaneously with the original arrangement regarding her use and occupancy of the family residence. Peggy argues that the recent Supreme Court ruling on this issue precludes an award of rent to a non-occupying spouse unless the award is fixed at the time use and occupancy is determined. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280. Austin argues that his request for rental "reimbursement" in his amended property partition petition, which put Peggy "on notice" that he was seeking rent, put the matter in a proper posture to allow an order for such. He argues that the rent was properly awarded as part of the property settlement, even in light of McCarroll, because the record does not contain an order signed by the judge awarding use and occupancy pending the partition. Because Peggy is correct, we must vacate the order "reimbursing" Austin for rent which was never made an obligation on Peggy's part.
LSA-R.S. 9:374C provides for the award of rental payments for a spouse's occupancy of the family residence pending partition of the community:
A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.
There is no question that there was no agreement to pay rent in this case. We must determine, therefore, whether the trial judge's order awarding rent, included as an item in the community property settlement, was proper under the provisions of this article.
The request for rent in this matter was made by Austin pending settlement of the community, post divorce. Therefore, after dissolution of their community, and until it is partitioned, Austin and Peggy continued to hold the property as owners in indivision, or, as co-owners. Anderson v. Anderson, 520 So.2d 1236, 1239 (La.App. 5 Cir.1988). In this situation, as has been made clear by the Supreme Court, LSA-R.S. 9:374 does not sidestep more general principles of co-ownership, but is applied in conjunction with the principles found in Civil Code articles 797 through 818articles governing "ownership in indivision." Article 802, in particular, provides that one co-owner cannot prevent another co-owner from making use of the property. Rights of each party, therefore, spring not from another co-owner's mere use of the common propertyhere, the family homebut from the fact of ownership. And though one party's exclusive use of the property does give rise to an action for damages, the action only arises if, and when, a demand for shared use is made and refused. McCarroll, 96-2700 at pages 19-20, 701 So.2d at 1289-90. Applying this principle to divorced spouses who yet hold property in common, if rent in this situation is a form of damages, the Supreme Court has held that "[f]or the assessment of rent under La.R.S. 9:374(C), there must be an agreement between the spouses or a court order for rent contemporaneous with the award of occupancy." McCarroll, 96-2700 at p. 20, 701 So.2d at 1290. That is, "[r]ental payments may not be assessed retroactively unless otherwise agreed to by the spouses or ordered by the court ... there must be an agreement between the spouses or a court order for rent contemporaneous with the award of occupancy." Lupberger v. Lupberger, 99-0144 at p. 3 (La.App. 4 Cir. 6/16/99), 738 So.2d 138, 140 (emphasis supplied).
*275 Austin argues that he is not precluded from seeking rent in conjunction with the property settlement because no order for use and occupancy was ever entered. This argument is unavailing, however. An order for use and occupancy is not required to allow either spouse to occupy the family homeunder the plain language of the statute, it applies to spouses who use and occupy or are awarded use of the family home pending partition. What is required, if there is no agreement to pay rent, if rent is sought pursuant to court proceedings and by order, is that such an order is entered at the time use and occupancy is determined. Thus, the trial judge's finding that an order for use and occupancy had been entered cannot salvage Austin's claim for rent as long as no contemporaneous order regarding rent is of record. We can't agree that the lack of an order for rent somehow holds in suspension the right to demand such payments, nor has Austin pointed to any other fact or circumstance which would have had this effect.
Because there was instead an agreement between the spouses regarding occupancy of the house, which agreement long preceded the request for rent, any award of rent would plainly be "retroactive." And Austin's argumentthat the award of rent was "only retroactive" to the date of the filing of pleadings to partition the community is unpersuasive. The pleadings themselves were filed long after Peggy's use and occupancy had been established.
Nor are we persuaded by Austin's assertion that the petition to partition the community was intended as a request for use and occupancy. Peggy should not have had to interpret a petition for partition the vehicle for determining ownership of the community propertyas Austin's request for use and occupancy of the family home. Further, Austin's request for rent as part of the community to be settled between the parties cannot operate to create a debt not due: there can be no "reimbursement" of sums never owed.
We note, finally, that the lack of any order fixing use and occupancy is not an accidental or unavoidable circumstance. Austin was even free after he had initially agreed to Peggy's free occupation of the house to have asked the court to abrogate the original agreement and enter an order which could have included a provision for rental payments. Had he done so, the court could have held the contradictory hearing described in LSA-R.S. 9:374. At this hearing, since the value of rent is not the only factor to be determined, all other pertinent factors would have been considered. When a property settlement is delayed or protracted, as it happened in the instant matter, the relevant facts may be hard or even impossible to ascertain, or facts which should have been considered under the article may no longer be extant.
Austin's having asked for rent "reimbursement" as part of the community property settlement denied Peggy the opportunity of having offered use of the family home to Austin or having otherwise avoided an assessment of "damages"in this case, rentfor her use of the home, and Austin should not be able to seek damages beyond the period during which his having sought use of the home might reasonably have resulted in such a possibility. And finally, an order requiring rental payments, made long after occupancy had been consented to would, as Peggy argues, be "extremely prejudicial" to her the result that must be avoided. McCarroll, 96-2700 at pages 20-21, 701 So.2d at 1290.
For these reasons, it is apparent that the order requiring Peggy to pay rent, not entered until the property settlement was made final, was not properly granted.

ASSIGNMENT OF ERROR NUMBER TWO
As Peggy's assignment of error number two, she alleges that the value fixed by the judge for rental payments was too high, that it was not in line with the figures *276 provided by her witness, the only one of the two testifying who was qualified as a real estate appraiser. However, since we have vacated the order requiring Peggy to pay rent at all, we need not address the figure set for such rental payments.
For the above reasons, we therefore vacate and reverse only that portion of the judgment below requiring Peggy to reimburse Austin for rental payments for her use and occupancy of the former family residence pending the parties' property settlement; the remainder of the judgment dividing the community property was not appealed, was not reviewed by this Court, and remains undisturbed.
JUDGMENT REGARDING RENTAL PAYMENTS REVERSED.

ON REHEARING
PER CURIAM.
Defendant-Appellant, Peggy Lamb Richard, seeks a rehearing in this matter and asks us to amend our opinion of May 30th, 2000, in such manner as will allow her to have the judgment below reformed to reflect our original holding disallowing Austin to claim rental payments from Peggy for her use of the family home pending the parties' property settlement. Specifically, Peggy asks us to either amend the judgment to recalculate the equalizing payments between her and Austin, or to remand the matter to allow for such a modification in the court below.
As this issue was not originally briefed by either party, and since a remand will additionally allow the parties to seek amicable resolution of this issue, we feel that remand is the more appropriate response to Peggy's request.
Therefore, this matter is hereby remanded to allow recalculation of the equalizing payments between the parties and any other necessary proceedings not inconsistent with this opinion and our original opinion in this matter.