BROWN, Chief Judge.
| plaintiffs, the children and heirs of Jim and Carolyn Lynch,[1] appeal the granting *1204 of summary judgment dismissing with prejudice their claims against defendant, River Cities Disposal Company, Inc. We reverse and remand for further proceedings.

Facts and Procedural Background

In the mid-1980s the City of Shreveport solicited proposals from solid waste companies to operate its Woolworth Road landfill. River Cities Waste Company, Inc. (“RCW”), a local commercial solid waste hauler, recruited Browning-Ferris Industries, Inc. (“BFI”), the company that was ultimately awarded the contract, to apply to be operater of the landfill. RCW assisted BFI in its preparation and formulation of its proposal.
After being awarded the contract by the City of Shreveport, BFI contracted with defendant, River Cities Disposal Company, Inc. (“RCDC”), a separate corporation created by the shareholders of RCW, for the marketing of BFI’s landfill operations to prospective commercial solid waste customers. Under the agreement, RCDC would receive 10 percent of the net revenues BFI received from the Woolworth Road landfill. The term of the contract between BFI and the City of Shreveport was extended until 2028.
Jim Lynch’s prior position as Director of Public Works for the City of Shreveport, as well as his experience as a former employee of another area commercial solid waste hauler, made him a valuable resource for RCW in 12obtaining the contract for BFI. Rather than paying up front for Lynch’s services, RCDC agreed to pay him a percentage of the net revenues it would receive under its marketing contract with BFI. The agreement was memorialized in a letter dated October 12, 1987, which provided:
This letter will serve as evidence of your ownership of 14½ percent of our net revenues from oui* Shreveport landfill agreement with BFI, Inc.
This letter was signed by John D. Caruth-ers, Jr., and Scott Pernici, secretary/treasurer and president, respectively of RCDC. Mr. Caruthers testified to the authenticity of the letter.[2]
Jim Lynch died of emphysema in 1989. At the time of his death he had received approximately $24,176 in payments from RCDC and, the year following his death, his estate received an additional $34,127. Thereafter, RCDC continued to pay the 14.5 percent to Lynch’s widow, Carolyn Lynch. These payments to Carolyn continued until her death in 2012 and totaled approximately $2,000,000.
Plaintiffs, the heirs and legatees of Carolyn Lynch, instituted this action by filing a petition for declaratory judgment and damages on May 10, 2013, seeking recognition of their ownership of the 14.5 percent interest. RCDC filed an answer and re-conventional demand alleging that the payments made to Jim and Carolyn Lynch lacked lawful cause and were donations that were not in proper ■ form. RCDC sought to recoup those payments to both Jim and Carolyn Lynch under the legal theory of payment of a thing not due.
|sThe parties engaged in discovery and ultimately filed cross motions for summary judgment. On August 29, 2014, the trial court granted plaintiffs motion for summary judgment as to RCDC’s reconven-tional demand to recover the money paid *1205 to the Lynches. The trial court, in a separate judgment, also granted RCDC’s motion for summary judgment as to the claims asserted by plaintiffs in the principal action. Plaintiffs now appeal.

Discussion

A motion for summary judgment shall be rendered “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Once the motion for summary judgment has been properly supported by the moving party, the inability of the non-moving party to bring forth evidence of a material factual dispute mandates the granting of the motion. Racine v. Moon’s Towing, 01-2837 (La.05/14/02), 817 So.2d 21; Robertson v. West Carroll Ambulance Service Dist., 39,331 (La.App.2d Cir.01/26/05), 892 So.2d 772, writ denied, 05-0460 (La.04/22/05), 899 So.2d 577. Appellate courts review summary judgment de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Id.; Traweek v. Jackson, 30,248 (La App.2d Cir.02/25/98), 709 So.2d 867.
Louisiana Civil Code article 1969 provides that “[a]n obligation may be valid even though its cause is not expressed.” The supreme court has | ¿recognized that the motive or real consideration can always be established by parol evidence. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280.
In this case, the affidavits, depositions and documents submitted in favor of and against the motions for summary judgment reveal the following relevant facts:
Jim Lynch provided RCW, and by proxy RCDC, valuable consulting services that aided in- its securing the marketing agreement with BFI.
The shareholders of RCDC had a meeting and decided to compensate Lynch with a percentage of the net revenue to be received by RCDC from the BFI agreement. The six shareholders agreed to essentially give Jim Lynch an equal interest in the BFI agreement.
No term was set for the length of time that Lynch would be paid. John D. Caruthers, Jr. testified that he’s “sure that we assumed as long as the [BFI] contract was alive.”
The October 1987 letter stated that it was evidencing Lynch’s “ownership of 14 ½ percent of [RCDC’s] net revenues from our Shreveport landfill marketing agreement with BFI, Inc.” Although Mr. Caruthers is the only person to testify to knowing about the letter, it was signed by him and Scott Pernici, president of RCDC.
Lynch had been suffering from severe emphysema for many years, and at the time of the October 1987 letter, he was not expected to live much longer. All shareholders of RCDC were aware of this fact.
The tax returns filed by RCDC with the IRS froft 1990 through 2012 listed the payments made from RCDC to Carolyn Lynch in a variety of ways. From 1990-1997 the payments were listed as “commissions”; for the periods 1998-1999 and 2001-2004, they 'were shown as “management fees”; in 2000, they were classified as “consulting fees”; from 2005-2011 they were referred to as “royalties paid tó non-owners”; and, for 2012, the attached statement is missing.
In its ruling on defendant’s motion for summary judgment the trial court, in a footnote, stated the following reasons for its ruling:
After a thorough review of this summary judgment record ... River Cities *1206 is entitled to judgment as a matter of law. Jim Lynch’s ^obligations were strictly personal and upon his death River Cities had no legal obligation to pay Carolyn Lynch or the Lynch heirs. The payments to Carolyn Lynch were voluntarily and gratuitously made. Neither Jim Lynch, his widow Carolyn, nor their heirs have a heritable ownership interest of 14 ½% of the net revenue from River Cities’ landfill marketing agreement with BFI dated March 17, 1987. The ambiguous letter of 10/12/87 had no legal significance and certainly does not evidence a contractual obligation. Moreover, the sworn Detailed Descriptive List in [Carolyn Lynch’s probate proceeding] does not include any reference whatsoever to any ownership interest of Carolyn Lynch regarding River Cities. That sworn document is ... arguably the linchpin of this summary judgment determination.
The crux of this case comes down to a determination of the cause of the contract as it bears on the classification of the payments made to Jim Lynch and, subsequently, Carolyn Lynch. RCDC alleges that they chose to compensate Jim Lynch for past consulting services, which were primarily provided to RCW, and for his ongoing future consulting services to be provided to RCDC. Because no future services were performed, RCDC claims that its obligation to continue to pay Lynch ceased at his death. Defendant contends that the payments for the next 23 years were “donations.”
Based on our thorough review of the record, we find that there exist genuine issues of material fact regarding this question. To start, the statements of RCDC’s shareholders are that Jim Lynch was given 14.5 percent of the net revenue generated from the BFI agreement as compensation for past services rendered, as well as in anticipation of future services that Lynch was to render, are self-serving. The October 1987 letter written to Jim Lynch on RCW stationery states that it was evidence of Lynch’s “ownership of 14 ⅜ percent of [RCDC’s] net revenues from our | ^Shreveport landfill marketing agreement with BFI, Inc.”[3] There is nothing in this letter about Lynch needing to perform future services. In fact, considering Lynch’s health, there is little doubt that the shareholders of RCDC would have contemplated that he would have the ability to perform many, if any, future services. The trial court found the letter to be “ambiguous” and “not evidence [of] a contractual obligation.” While we are not as certain about the equivocality of the letter, the mere fact that the trial court found what could be a crucial piece of evidence “ambiguous” leads us to find that it erred in making its determination that there were no genuine issues of material fact.
Additionally, throughout this dispute RCDC has made it a point to emphasize the fact that it did not transfer any stock ownership to Jim Lynch, and that he had absolutely no ownership interest in the company. RCDC references, among other things, the strict transfer rules imposed on shareholders to show that Lynch had no ownership. Plaintiffs, however, are not trying to show or prove that Lynch had any ownership in the company or company stock. Instead, they point out that the October 1987 letter expressly states that Lynch had a percentage ownership of the net revenues generated from the BFI marketing agreement. Thus, if RCDC had conducted any other business, Lynch would not have been privy to the proceeds garnered from such business. It just so happens that RCDC’s sole business ven *1207 ture was executing the marketing agreement with BFI.
|7We also find that a genuine issue of material fact exists in the classification of the payments made to Carolyn Lynch. Defendant adamantly states that the payments made to Carolyn were donations, as the shareholders of RCDC promised Jim Lynch that they would make sure to take care of Carolyn after his death. RCDC’s tax records tell another story, however. Four different accounting firms and over 20 years worth of tax records list the payments made to Carolyn Lynch in a variety of ways. In the most recent years, the payments were listed as “royalties paid to non-owners.”
The availability of summary judgment in contract actions depends greatly on the kind of contract involved and the type of contractual issue in dispute. Generally, summary judgment will not be granted if issues are presented involving an inquiry into the state of mind of any of the contracting parties. A typical problem involving state of mind arises when the contract terms are ambiguous; thus, it is necessary to determine the intent of the parties to the contract. McCarroll, supra.
It is the aim of the courts in interpreting a contract to give effect to the mutual intention of the parties as it existed at the time of the execution of the contract. La. C.C. art. 2045. In the case sub judice, it can not be determined whether the parties ever considered, at the time the letter was written, the question now presented, or if they did, what their intention was. Such a determination can not be made on affidavits but can only be determined after trial. It would be premature to grant summary judgment under these circumstances.
| sWhether these payments were for past or future services, donations or royalties paid is something to be determined at a trial on the matter. The trial court erred in finding that no genuine issue of material fact exists as to the cause of the contract, particularly since the classification of these payments has a bearing on the heritability of Jim Lynch’s 14.5 percent of the net revenues of RCDC’s marketing agreement with BFI.

Conclusion

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of defendant, River Cities Disposal Company, Inc., is reversed. This matter is remanded for further proceedings. Costs of this appeal are assessed to defendant.

. Specifically, the plaintiffs are Colleen Katherine Hansen, individually and as independent executrix of the succession of Carolyn F. Lynch, Karen Elizabeth Lynch Stephens, Shannon Anne Lynch Morgan, James Sproule Lynch, Jr., and Kelly Patrick Lynch.

. Scott Pernici did not remember the letter.

. Although written on RCW’s stationery, all parties agree that this letter was for RCDC.