828 So.2d 132 (2002)
STATE of Louisiana-Sandra McGee, Appellee
v.
Kenny A. BATTSON, Appellant.
No. 36,336-JAC.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
*133 Michael O. Craig, Benton, for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Robert Randall Smith, Assistant District Attorney, for Appellee.
Before BROWN, KOSTELKA and HARRISON (Pro Tempore), JJ.
KOSTELKA, J.
Kenny Battson ("Battson") seeks review of the judgment denying his request to decrease his child support obligation based upon the district court's determination that he was voluntarily underemployed. We reverse the judgment denying Battson's request to reduce his child support obligation and reduce the monthly child support obligation.

Facts
Of the marriage between Battson and his former wife, Sandra Wells McGee ("McGee"), one child, Kasey, was born on June 2, 1989. Upon Battson's and *134 McGee's divorce, Battson stipulated to child support payments of $550 per month on September 2, 1997. At the time of the agreement, Battson worked as a disc jockey for a Shreveport radio station and was a popular radio personality in the area. When in 1999 he lost his employment, Battson sought a decrease in the child support amount. However, when he was re-employed in the radio field, Battson withdrew his request.
Battson moved to Brandon, Mississippi and there obtained employment as a disc jockey with a radio station in Jackson, Mississippi. Battson had remarried and had a stepchild in Mississippi. However, in January 2001, Battson was terminated from his radio station employment and filed a rule to decrease his support obligation on February 23, 2001.
A hearing on this rule to decrease support was held before a hearing officer on March 20, 2001, in accordance with La. R.S. 46:236.5, et seq., which provides an expedited process for establishment and modification of support.[1] Because Battson failed to make a sufficient showing that he had sought employment, however, the hearing officer denied Battson's request.
Battson excepted to this ruling in the district court and in the meantime obtained employment with Wal-Mart. At the appeal hearing on April 2, 2001, the district court remanded the case to the hearing officer for a second hearing to determine the level of Battson's earnings.
On May 8, 2001, the parties agreed that Battson would pay $350 per month until the rule for decrease in support could be heard. After two more continuances, the hearing on the rule to decrease occurred on December 4, 2001. Upon considering the testimony of experts and Battson, the hearing officer concluded that Battson was not voluntarily underemployed and recommended that the child support be reduced.
At the conclusion of the hearing, the state excepted to this ruling in accordance with La. R.S. 46:236.5(C)(6) and Rule 33(C), Twenty Sixth Judicial District Civil Court Rules. After the parties agreed to submit the contradictory appeal hearing on the transcripts, the district court rejected the recommendation of the hearing officer and found Battson to be voluntarily underemployed and reinstated the child support award to the original amount of $550 per month. A written judgment reflecting this determination was signed by the trial judge on December 18, 2001.[2] This appeal ensued.

DISCUSSION
At the time Battson's rule for reduction was filed, La. R.S. 9:311 provided in pertinent part:
(A) An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
Additionally, La. R.S. 9:315.9 provided in part:

*135 If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years....[3]
Not every change in circumstances warrants a reduction in child support. Louisiana jurisprudence distinguishes between voluntary and involuntary changes in circumstances. Savage v. Savage, 36,138 (La.App.2d Cir.06/12/02), 821 So.2d 603. An involuntary change is one resulting from fortuitous events or other circumstances beyond that person's control, such as loss of one's position or illness. A voluntary act rendering it difficult or impossible to meet one's support obligation is not a ground for release, in whole or in part, from the obligation. Id.
There is apparently no dispute that Battson's termination from his job at the Mississippi radio station was not voluntary. Nevertheless, at issue at the hearing to decrease was whether his continued unemployment in the radio field, i.e., employment at Wal-Mart, qualified as voluntary underemployment. Proof of a change in circumstances does not justify the reduction of a child support award where an obligor's inability to pay arises from his own voluntary actions. McHale v. McHale, 612 So.2d 969 (La.App. 2d Cir.1993). Voluntary underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse. Gould v. Gould, 28,996 (La.App.2d Cir.01/24/97), 687 So.2d 685. In virtually every case where a parent's voluntary unemployment or underemployment was found to be in good faith, courts have recognized extenuating circumstances beyond that parent's control which influenced or necessitated the voluntary change in employment. Hutto v. Kneipp, 627 So.2d 802 (La.App. 2d Cir. 1993). A party is not deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. Savage, supra. Voluntary underemployment is a fact-driven consideration. Koch v. Koch, 97-1600 (La.App. 4th Cir.04/22/98), 714 So.2d 63. The trial court has wide discretion in determining the credibility of witnesses and its factual determinations will not be disturbed on appeal absent a showing of manifest error. McHale, supra.
When a hearing officer is employed by the court in cases involving modification of child support, the hearing officer acts as a finder of fact and makes recommendations to the court concerning the modification of support. La. R.S. 46:236.5(C)(3). Any party, within the time and manner established by court rule,[4] may file an exception to the findings of fact or law of the hearing officer. Upon the filing of the exception, a contradictory hearing is to be held before a judge who shall accept, reject or modify in whole or in part the findings of the hearing officer. La. R.S. 46:236.5(C)(6).
In the case sub judice, the hearing officer heard testimony from two experts in the radio field. First to testify was Gary McCoy ("McCoy"), director of programming with Clear Channel in Shreveport, Louisiana. He explained that with deregulation of the radio industry, large corporations are now allowed to own multiple *136 stations. For example, Clear Channel[5] owns six properties in the Shreveport market, in excess of twenty in the Louisiana market and a total of 1,300 radio stations. Another company, Cumulus owns 600. McCoy explained that, as a result, if a person got released from one of the corporate properties owned by Clear Channel, he got fired from 1,300 stations. McCoy had worked with Battson in the past and in McCoy's opinion, Battson would make a "very good announcer." He opined that Battson would be employable in the radio industry. McCoy testified that most of the disc jockeys who worked for him in Shreveport made under $20,000 a year. He stated he would hire Battson if Battson could work for $14,000 or $15,000 a year and there was an opening. He also explained that the position of disc jockey was fairly specialized and required special training.
Gene Dickerson ("Dickerson"), a veteran of the radio industry for more than forty years, also testified. Dickerson, who had once employed Battson as an announcer, stated that Battson was a uniquely talented individual who possessed the ability to draw and hold a large audience and conduct successful remote broadcasts and public appearances. Dickerson also testified that Battson had once been nominated for a small-market DJ of the year award. Dickerson felt that Battson would be a quality candidate to work in any medium-sized market in America and possibly some major market situations. He explained that market size determines how much an individual would get paid. Dickerson stated that if Battson "landed the right position," he could earn anywhere from $45,000 to $80,000 a year as a morning show host or co-host. Dickerson, who acknowledged his own current search for employment, testified that there remained many independently-owned radio stations which would present no barrier to employment. Dickerson admitted, however, that his own chances of being employed by his former large corporation employer were "probably not very good."
Battson also testified at the hearing. He stated he was currently employed at Wal-Mart as an assistant manager making approximately nine dollars per hour. He testified that he had been terminated from his radio job due to budgetary constraints at the radio station. Battson revealed that he had been looking for jobs "in other locations" and had finished in the top five but never got the jobs. Battson stated that since January 24, 2001, he had sent out twenty-five to thirty different applications for that many jobs. He testified that he would work in the Jackson, Mississippi area but was available for any other market where the circumstances were right. He said that he certainly would consider employment in Little Rock, Arkansas for $50,000 a year but would have to consider the facts that he would have to sell his home, had a child in school and a wife who had a job. He could not see uprooting his family for less income. Battson testified that he earned between $48,000 and $50,000 in his best radio year in the radio industry from both his salary and outside activities.
From this evidence, the trial court found Battson to have been voluntarily underemployed. The court based this finding on its determination that Battson "ha[d] not sought jobs in other market areas" and had "sent out some 25 to 30 resumes in the Jackson area." (Emphasis ours). Further, the court found that Battson's choice *137 to remarry and remain in an area where "his employment opportunities are less," further indicated that his choice of employment at Wal-Mart constituted voluntary underemployment.
After a thorough review of the record before us, we conclude that the district court abused its discretion in determining that Battson was voluntarily underemployed and in denying Battson's rule to decrease his child support obligation.
The record before us belies the trial court's factual determination that Battson had failed to seek jobs in other markets. Battson's uncontroverted testimony was that he had "been looking for jobs in other locations," (emphasis ours) and had unsuccessfully applied for "at least twenty-five or thirty different jobs" but had simply been unable to secure employment. The trial court obviously accepted Battson's testimony regarding his search for employment but for some reason limited the extent of that search to the Jackson area. Whether this factual determination can be classified as a mistake or an oversight, it is nevertheless unsupported by the record before us. Nor does the record contain any additional evidence regarding the extent or scope of Battson's search for employment. While the experts' testimony certainly portrayed Battson as an excellent employee in his field, it nevertheless failed to assist in demonstrating either the earnestness or extent of Battson's job search. With no contrary evidence on the record before us, such a factual determination, which so contradicts Battson's unopposed testimony, is manifestly erroneous. We conclude that Battson's testimony is sufficient to show his employment-seeking efforts were done in earnest and qualify as more than a "token" search for employment. Compare, Glover v. Glover, 28,493 (La.App.2d Cir.06/26/96), 677 So.2d 659.
Nor do we agree that in these circumstances, Battson's failure to move from his present residence demonstrated his voluntary underemployment. It is undisputed that Battson moved to the Jackson area at a time when employment was available to him, although he later lost his job. Clearly, therefore, it is reasonable to conclude that his move to Mississippi was not motivated by a desire to avoid his child support obligation. Nor does the evidence show that his remaining there at this time or acceptance of employment with Wal-mart exhibits such bad faith. The record before us is devoid of evidence demonstrating either that actual job positions were available to Battson in a more favorable market or that he declined suitable employment in those areas. Rather, Battson's testimony, that he had to no avail sought employment in other locations, was the only proof offered of actual available employment in other markets. Additionally, on this issue, the expert testimony plainly revealed the difficulties concomitant with obtaining a radio job in a deregulated market saturated with large corporate owners in every area of the country. McCoy clearly stated the effect of loss of employment with a corporate owner, i.e., a person got fired from every company that the employer owned. This testimony certainly supports the conclusion that in this case Battson was the victim of such a market. Indeed, Dickerson's admission that his own chances of re-employment with the corporate owner of his previous employer were not very good is not only corroborative of Battson's claims but serves to further illuminate the state of employment in the radio industry. While both experts testified that Battson would be employable in the radio market, neither specified job openings nor could either offer comment on the extent or results of Battson's job search. McCoy was only able to state that he could have offered Battson employment *138 if someone left his station and only at the rate of $14,000 or $15,000 per year.[6] Likewise, Dickerson stated that Battson could earn $45,000 to $80,000 a year if he landed the right position. Such conditional speculations are inefficacious, either to prove Battson's good faith in seeking employment or the availability of jobs in other markets. We can conceive of no legal requirement that compels an individual to uproot his family to a "more desirable" employment area merely because the employment conditions may be more favorable. See, Goss v. Goss, 95-1406 (La.App. 3d Cir.05/08/96), 673 So.2d 1366, which rejected such a claim when the record was void of any evidence establishing that the obligor-spouse could have obtained such employment in another location. The consequences attendant to such a requirement are obvious. To require Battson to move to a more desirable employment market, without a showing that he could obtain employment there, would be unreasonable. In these circumstances, we cannot agree that Battson's choice to remain where he is, until such time as he may find a satisfactory position in the radio field or be promoted to a level of suitable income at his present position, shows his bad faith in seeking employment. Rather, we find that the record before us shows Battson's inability to obtain employment in the radio industry to be the result of no neglect or fault of his own but rather the state of the deregulated radio industry. In concluding otherwise, the trial court erred.
We, therefore, reverse the trial court judgment which denied Battson's rule to decrease child support and grant his request to decrease his child support obligation. Because no party has protested the amount of the hearing officer's reduction in child support determination, we find it unnecessary to remand for a re-calculation of that amount. Rather, by the authority granted to us in La. C.C.P. art. 2164, to render any judgment which is just, legal and proper upon the record before us, we accept as a final judgment the hearing officer's child support reduction calculation as set forth in the December 4, 2001 hearing.

Conclusion
For the foregoing reasons, we reverse the judgment of the district court, which denied Battson's request for reduction in child support due to his voluntary underemployment, and accept as a final judgment, the hearing officer's recommendation at the December 4, 2001 hearing.
For the extent allowed by law, costs of this appeal are assessed to the State of Louisiana, Department of Social Services.
JUDGMENT REVERSED AND RENDERED.
NOTES
[1] See further discussion of these provisions, infra.
[2] Notably, the record reveals that on December 14, 2001, another district judge accepted the hearing officer's recommendation as a final judgment and rendered a written judgment reflecting that acceptance, apparently in conformance with La. R.S. 46:236.5(C)(7). However, because an exception to the hearing officer's recommendation was timely filed by the state in accordance with La. R.S. 46:236.5(C)(6) and the local court rules, the district court judge was without authority to so act. Accordingly, for purposes of this appeal, we disregard these judgments.
[3] These articles were amended and/or renumbered by Acts 2001, No. 1082 which specifically applied the changes to actions filed after August 15, 2001.
[4] Rule 33(C) provides that the exception shall be made orally, in open court, immediately upon rendition of the hearing officer's recommendation.
[5] The record shows that in the radio market in which Battson lives, Clear Channel owns all but one of the radio stations.
[6] Moreover, this testimony would have supported Battson's position had the job actually been available, because the record shows that he earned more at Wal-Mart.