876 So.2d 196 (2004)
Patricia Marshall SCHULER
v.
Raymond Gerard SCHULER.
No. 04-CA-91.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
*197 Jane E. Booth, New Orleans, Counsel for Plaintiff/Appellant.
*198 Don C. Gardner, Harahan, Counsel for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
EDWARDS, J.
Plaintiff/Appellant, Patricia Marshall Schuler, appeals the trial court's ruling in favor of her former husband and defendant, Raymond Gerard Schuler, which assessed a rental reimbursement against Ms. Schuler on the family home, awarded interim spousal support to Mr. Schuler, and suspended child support payments by Mr. Schuler for the Schuler's minor child until further orders of the court. For the following reasons, we affirm in part, and reverse and remand in part.

FACTS AND PROCEDURAL HISTORY
Plaintiff/Appellant, Patricia Marshall Schuler (Ms. Schuler), and defendant, Raymond Schuler (Mr. Schuler), were married on February 26, 1983, and thereafter established a matrimonial domicile in Jefferson Parish. On July 16, 2003, Ms. Schuler filed a Petition for Divorce, A Rule for Child Custody and Child Support, A Request for Exclusive Use and Possession of the Family Home and Vehicle, A Request for Temporary Restraining Orders, as well as a Petition for Partition of Community Property. By order of the Domestic Hearing Commissioner, Ms. Schuler's Rules for Child Custody and Child Support, Temporary Restraining Orders, and Request for Exclusive Use and Possession of the Family Home and Vehicle were set for August 19, 2003. Prior to the hearing date, Mr. Schuler also filed his own Rule for Spousal Support.
On August 19, 2003, Ms. and Mr. Schuler received a recommendation of a hearing officer regarding the issue of child support. The hearing officer found, based on a $44,457 earning capacity by Mr. Schuler, that Mr. Schuler should pay $405 per month in child support, 38% of any medicals, and 38% of school tuition, including mandatory and registration fees. On September 16, the Honorable Judge Robert Pitre signed an Interim Order submitted by the Domestic Commissioner that mirrored the recommendations of the hearing officer.
On August 19, 2003 a Consent Judgment was entered in which the parties stipulated that Ms. Schuler would have exclusive use and occupancy of the family home, subject to Mr. Schuler's reservation of rights for reimbursement. The parties agreed as to the exclusive use of family vehicles and to not alienate or encumber any of the community property existing between them. Ms. and Mr. Schuler also agreed to a custody arrangement for their minor child, reserving their respective rights to litigate domiciliary parent and visitation rights issues.
On August 20, 2003, Mr. Schuler filed an Objection To the Ruling Of the Commissioner, requesting a full evidentiary hearing. The hearing on Mr. Schuler's Objections was held on October 24, 2003 on the issues of Rental Assessment, Spousal Support and Child Support. On November 3, 2003, the trial court issued a judgment that set a rental assessment in favor of Mr. Schuler in the amount of $1151.00[1] and monthly spousal support from Ms. Schuler to Mr. Schuler in the amount of $200.00 per month until the divorce decree was rendered. The trial court also suspended the payment of child support by Mr. Schuler, based on a finding that his income was "insufficient to justify the continuing payment."
*199 It is from this judgment that Ms. Schuler has timely filed the present appeal.

LAW AND ANALYSIS
On appeal, Ms. Schuler raises four assignments of error: 1)The trial court erred in assessing a rental reimbursement on October 24, 2003 as Louisiana Law requires that the rental assessment be determined contemporaneously with an award of use and occupancy of the family home; 2)The trial court erred in setting the rental assessment at $1,150.00 ($629.00 at another place in the Judgment) as defendant failed to present any credible evidence to support or substantiate the rental value set by the court; 3)The trial court erred in awarding Mr. Schuler interim spousal support in the amount of $200 because the court failed to consider his income earning potential, and; 4)The trial court erred in suspending child support for the minor child until further orders of the court.
We first address Ms. Schuler's assignments of error pertaining to the issue of rental reimbursement. As this Court noted in Gravois v. Gravois:[2]
LSA-9:374(C) states in pertinent part:
C. A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.
Jurisprudence has interpreted this section to require that such an agreement or court order be made at the time use and occupancy is awarded; rental payments may not be retroactively assessed. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280.
In the present case, there was not a court order in existence at the time that Ms. Schuler was awarded exclusive use and occupancy of the family home. However, on the day that the consent judgment was read into the record, counsel for Mr. Schuler stated before the court:

COUNSEL:
...Ms. Patricia Schuler shall have the exclusive use and occupancy of the family home at 117 Hibiscus Place in River Ridge, that the parties reserve Mr. Schuler's rental reimbursement value.
Later, in the proceedings on August 19, 2003, the Domestic Commissioner sought a clarification on Mr. Schuler's reservation of rights regarding rental reimbursement:

THE COURT:
As I understand, then, what you're doing is when you say reserve his rental claim, under McCarroll, that he's requested or is requesting a rental reimbursement and that the issue of that is reserved until partition. But is that what you're saying?

COUNSEL FOR MR. SCHULER:
It is, Your Honor, and I am going to file my rental reimbursement rule tomorrow.

THE COURT:
I understand that, for the purpose of establishing the start date. But today you're agreeing that she has the provisional use and occupancy of the home.

COUNSEL FOR MR. SCHULER:
Correct, Your Honor.

*200 THE COURT:
And she is agreeing that his right to a rental reimbursement is reserved under McCarroll for the purposes of determining, one, an entitlement, and, number two, the amount of the entitlement, if any. Is that correct?

COUNSEL FOR MS. SCHULER:
Correct.
Ms. Schuler now argues that Mr. Schuler was required procedurally to make his own request for use and possession and alternatively, for rental reimbursement, prior to the time that the court awarded use and possession to her. Ms. Schuler further argues that, as indicated in portions of the trial transcript included above, she reserved her right to challenge Mr. Schuler's entitlement to rental reimbursement. Conversely, citing Gravois, supra, Mr. Schuler asserts that although the parties in this case did not have an award of rent in the consent judgment, they did have an agreement concerning rent, which was executed contemporaneously with the award of use and occupancy in the form of a consent judgment that was read into the record.
After a review of the record, we find that the consent judgment between the parties was a sufficient "agreement" as contemplated by LSA-R.S. 9:374(C), to reserve Mr. Schuler's right to seek rental reimbursement from Ms. Schuler. As this Court found in Gravois, supra, in this case, though no award of rent was made in the oral August 19, 2003 Consent Judgment, it cannot be said that an order regarding rent does not exist contemporaneous with Ms. Schuler's award of use and occupancy.
In Ms. Schuler's next assignment, she argues that the trial court erred in setting the rental assessment at $1,150.00, indicated as $629.00 at another place in the Judgment.
We note that the judgment, on its face, is unclear as to the actual rental amount awarded to Mr. Schuler. However, the record indicates that testimony and evidence was presented at the October 24, 2003 proceedings in support of Mr. Schuler's Rule For Rental Assessment. First, Mr. Schuler testified that he is currently a licensed real estate agent. As a licensed real estate agent, Mr. Schuler stated that he has access to a Multiple Listing Service, whereby he can obtain comparables on homes for sale or rent. Mr. Schuler testified that, based on his research, in his opinion the rental value of a home with similar location, square footage and amenities was between $1,300 and $1700. Schuler further stated that both dwellings that he used for comparable rental value were within one mile of the residence occupied by Ms. Schuler. Mr. Schuler indicated that the monthly mortgage note on the property is $629.00 a month.
The trial court indicated that it would not qualify Mr. Schuler as an expert in the valuation of homes. On cross examination, Mr. Schuler admitted that he had never been hired to appraise homes for rental value, and that he had never spoken to a licensed real estate appraiser regarding the rental value of the home.
Ms. Schuler offered no evidence at the hearing as to the possible rental value of the home.
In Otterstatter v. Otterstatter,[3] the Third Circuit reversed an award of rent that was based on what the court considered to be a lack of "competent evidence." Specifically, the court held it to be an error for the trial court to assess a rental award based on *201 testimony made by a party who did not have any particular experience or expertise in real estate rentals, and whose figure for the rental was "merely a guess."
Similarly, in this case, we find that the evidence presented to the trial court regarding the rental value of the Schuler's home to be speculative at best, and therefore insufficient for the purposes of determining an award to Mr. Schuler. Accordingly, we reverse the trial court's judgment on this issue and remand for a rehearing on the rental value of the home.
Ms. Schuler next argues that the trial court erred in awarding Mr. Schuler interim spousal support in the amount of $200, asserting that the court failed to consider the income earning potential of Mr. Schuler. Likewise, in her final assignment of error, Ms. Schuler claims that the trial court erred in suspending child support for the minor child until further orders of the court. Both of these assignments necessarily relate to the trial court's finding that Mr. Schuler was not voluntarily under employed.
In addressing Ms. Schuler's assignment related to interim spousal support, we note that La. C.C. art. 111 provides, in relevant part:
In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay...
We first review the record as it pertains to Mr. Schuler's employment status at the time that the awards in question were made.
Mr. Schuler testified that prior to August 2003 he had been an employee of BellSouth, working in the Coin Telephone Department division and earning an annual salary of $49,430.44. In January of 2003, Mr. Schuler was informed that BellSouth was going to close down his division, and he was presented at that time with an option from BellSouth to either accept a position in Morgan City, Louisiana or to retire early. Mr. Schuler testified that he and Ms. Schuler discussed his options at that time and that Ms. Schuler agreed that he should take the retirement. In consideration of his early retirement, Mr. Schuler received a lump sum payment of $233,000.00, and approximately $90,000.00 in a 401K. These assets were frozen by the court at the time of the hearing, and therefore Mr. Schuler could not utilize that money for any of his living expenses.
Also, prior to their separation, Mr. and Ms. Schuler also discussed the fact that Mr. Schuler would become a real estate agent as an alternate source of income. While the Schulers were still married, Mr. Schuler stated that he took several real estate tests, and received training from Latter and Blum, where he later went to work.
In terms of his physical condition, Mr. Schuler testified that in 1994 he had three back surgeries that resulted from "improper lifting" in connection with his job at BellSouth. At the time of trial, Ms. Schuler said that he still suffered pain on a daily basis as a result of the surgeries. Mr. Schuler said that the condition of his back was a factor in his retirement that was discussed with Ms. Schuler. Mr. Schuler said that he was under Doctor's instructions to self treat his back by maintaining an exercise regimen.
Mr. Schuler stated that upon his retirement, he and Ms. Schuler agreed that they would "reverse" their roles in meeting the family expenses, with Ms. Schuler assuming responsibility for the majority of the *202 family's bills. Mr. Schuler said that Ms. Schuler did not object to his retirement, and that they had discussed that there would be some "down time" until he got his real estate business started. Ms. Schuler said that approximately one month after his retirement from BellSouth, he and Ms. Schuler separated. Mr. Schuler testified that from May through October, 2003 he earned $5,722.00 as a real estate agent, and had business expenses of $1,785.40 during that same time period. Mr. Schuler testified that he worked approximately 40 to 50 hours a week as a real estate agent.
At the time Mr. and Ms. Schuler separated, Mr. Schuler borrowed $27,000.00 from a line of home equity in order to cover his living expenses, but later returned all but $7,700.00 at the request of Ms. Schuler's attorney. He testified that he had been living off of that $7,000, as well as his earnings as a real estate agent. Mr. Schuler testified that his monthly rent is $1,000.00 per month, but that his landlord has allowed him to live there some months without requiring payment up front. While Mr. Schuler estimated his monthly net income at $656.10, Mr. Schuler's total monthly expenses amounted to $2,804.00.
Ms. Schuler testified that she, her major son, and her minor son all lived in the former community home. Ms. Schuler stated that she pays expenses, including tuition, for her adult son who is in college, and allows him to live at the residence rent free. Ms. Schuler is employed as an x-ray technician, and made $58,762.65 in 2002. Ms. Schuler estimated that while her gross monthly income is $3,195.60, her total monthly expenses were $3,841.50. She did, however, increase her contribution to her retirement system since she and Mr. Schuler separated, and stated that she was depositing $600.00 a month from her paycheck into a credit union account. Ms. Schuler testified that since Mr. Schuler's back surgeries, he can do any activities that he did before the surgeries, as long as he works out. She did not recall any conversations with Mr. Schuler about moving to Morgan City to continue working for BellSouth, but did recall that they had discussed his retirement from BellSouth.
In this case, the trial court determined in its Judgment:
The court determines that Mr. Schuler is not voluntarily unemployed, nor voluntarily underemployed. Due to no fault of his own, Mr. Schuler's position with South Central Bell was phased out and his offer for a change of position was declined. Both Raymond and Patricia Schuler were part of the decision to discontinue work for South Central Bell. Mr. Schuler's decision to begin working as a real estate agent was made before the couple separated and was not a voluntary underemployment for the purpose of impoverishing himself to obtain spousal support...
Mrs. Schuler stated that she is voluntarily putting $600 a month in a savings account and that $320.00 a month is deducted from her salary for retirement purposes. Because Patricia Schuler has the means to help provide for the living expenses of Raymond Schuler a monthly award of $200.00 shall be paid until the final divorce decree is rendered.
The trial court is vested with much discretion in determining awards of spousal support, and such determinations will not be disturbed absent a clear abuse of discretion.[4] After a review of the record, we find the trial court's award of $200.00 a *203 month to Mr. Schuler to be reasonably supported.
In regard to the setting of child support, this Court recently stated in State, Dept. of Soc. Ser., ex rel. S.McC. v. J.A.McC.[5]
La.R.S. 9:315(6)(b) states, "A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party."
"Voluntary underemployment is a fact-driven consideration. The trial court has wide discretion in determining the credibility of witnesses and its factual determinations will not be disturbed on appeal absent a showing of manifest error." State v. Battson, 36,336, p. 5 (La.App. 2 Cir. 9/18/02), 828 So.2d 132, 135.
Voluntary underemployment is a question of good faith on the part of the obligor spouse. Havener v. Havener, 29,785, p. 10 (La.App. 2 Cir. 8/20/97), 700 So.2d 533, 539. The trial court, however, has wide discretion in determining the credibility of the witness; whether the obligor spouse is in good faith in ending or reducing his income is a factual determination which will not be disturbed absent an abuse of discretion. Id.

In this case, the trial court stated in its Judgment:
Previously, child support was set using an income level for Mr. Schuler at his previous employment level with South Central Bell. Because this Court has determined that Mr. Schuler is neither voluntarily unemployed or underemployed, child support shall be suspended until further order of the Court. Mr. Schuler's income level is insufficient to even cover his own basic needs much less that of the minor child. Mr. Schuler's income is completely insufficient to justify the continuing payment until his income level has increased or the community property has been partitioned.
A parent's child support obligation is a primary continuous obligation.[6] It cannot be renounced or suspended.[7] Neither the parents nor a court decree can permanently set aside the duty of support.[8]
Courts have also found, however, that the obligation to support children "is conjoint upon the parents and each must contribute in proportion to his or her resources."[9] As Planiol noted, "This obligation is solidary because each parent is bound for the entirety. Thus, if one of them has nothing, or if one of them dies, the other is obligated to support alone all the expenses."[10]
The trial court's order of child support is entitled to great weight and will not be disturbed on appeal absent clear abuse of discretion.[11] Accordingly, based upon our review of the record, we find that the trial court did not abuse its discretion in finding that Mr. Schuler was not voluntarily unemployed or underemployed, and that his income was temporarily insufficient to *204 continue child support payments pending further order of the court.
For the foregoing reasons, the portion of the trial court's judgment related to the rental value of the community home is reversed and remanded. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART
CHEHARDY, J., CONCURS IN PART AND DISSENTS IN PART.
CHEHARDY, J., Concurs in Part and Dissents in Part.
I concur with the majority opinion on the issues of rental reimbursement and interim spousal support. I vigorously dissent, however, regarding the suspension of child support.
The trial court decreed that "the order for child support be suspended until further order of the court." In my view, any ruling that permits suspension of a child support obligation is dangerous. In this case, I find it completely unacceptable that Mr. Schuler's child support obligation was suspended altogether, even "pending further order" of the district court.
Child support can neither be renounced nor suspended, although the parents may agree to suspend the right to compel collection of this obligation. Dubroc v. Dubroc, 388 So.2d 377 (La.1980). A parent's child support obligation is a primary, continuous obligation. Fink v. Bryant, 01-0987 (La.11/28/01), 801 So.2d 346, 349. A parent who proves he is unable to provide child support may obtain a reduction or discharge by showing that he has experienced a change in circumstances from the time of the previous award. La.C.C. art. 232. However, the parent is not relieved of his obligation unless he not only is unemployed, but also is unemployable. Singletary v. James, 02-1074 (La.App. 3 Cir. 2/5/03), 838 So.2d 115, 117.
Louisiana law "abhors a gap in the support of one in need" and the substantive right to support, whether it be a spouse's or a child's, "clearly begins, fluctuates and ends in accordance with his needs and the debtor's ability to pay." Hogan v. Hogan, 549 So.2d 267, 272-273 (La.1989). A court should not grant relief to an obligor whose joblessness is the result, either in whole or in part, of his or her own doing. Singletary v. James, 02-1074 (La.App. 3 Cir. 2/5/03), 838 So.2d 115, 117.
There was no agreement between appellant and appellee to suspend payment of child support. Further, the appellee is not in such dire circumstances that he should be relieved of his obligation to support his minor child. In my view the trial court abused its discretion regarding the child support obligation.
Accordingly, I dissent insofar as the majority opinion upheld the trial court's ruling on child support.
NOTES
[1] The rental assessment is set at $629.00 on another page of the judgment.
[2] 03-559 (La.App. 5 Cir. 10/15/03), 860 So.2d 90.
[3] XXXX-XXXX (La.App. 3 Cir. 3/1/00), 758 So.2d 298.
[4] McDermott v. McDermott, 32,014 (La.App. 2 Cir. 6/16/99), 741 So.2d 186, 188.
[5] 03-108 (La.App. 5 Cir. 5/28/03), 848 So.2d 121.
[6] Fink v. Bryant, 01-987, p. 5 (La.11/28/01), 801 So.2d 346, 349.
[7] Dubroc v. Dubroc, 388 So.2d 377 (La.1980).
[8] Dubroc, supra n. 3.
[9] Hogan v. Hogan, 549 So.2d 267 (La.1989).
[10] 1 M. Planiol, Civil Law Treatise, pt. 2 § 1683.
[11] Campbell v. Campbell, 95-1711, p. 4 (La.App. 1st Cir.10/10/96), 682 So.2d 312, 316.