942 So.2d 1130 (2006)
Theresa SAACKS
v.
Merlin J. SAACKS, Jr.
No. 05-CA-365.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2006.
*1132 R. Scott Buhrer, Attorney at Law, Metairie, Louisiana, for Appellee, Theresa Saacks.
Merlin J. Saacks, Jr., In Proper Person, Metairie, Louisiana.
Steven F. Griffith, Sr., Attorney at Law, Destrehan, Louisiana, for Appellant, Merlin J. Saacks, Jr.
Panel composed of Judges SUSAN M. CHEHARDY, FREDERICKA HOMBERG WICKER and JAMES C. GULOTTA, Pro Tempore.
SUSAN M. CHEHARDY, Judge.
In this appeal, Merlin Saacks seeks review of the trial court judgment establishing child support and interim spousal support and partitioning the community of acquets and gains that formerly existed between himself and Theresa Saacks. For the following reasons, we affirm in part and reverse in part.
Facts
Merlin and Theresa Saacks were married on February 16, 1985. Two children were born during the marriage. On August 8, 2001, Theresa filed a Petition for Divorce. In conjunction with her petition for divorce, Theresa also filed a Rule for Child Support and Interim Periodic Spousal Support.
On August 17, 2001, Merlin answered and filed Rules for Incidental relief regarding preservation of community funds. Further, on September 5, 2001, Merlin filed a Motion for Rental Value seeking rental value for the marital home "should the use and occupancy be granted to Theresa Saacks."
On October 25, 2001, after attempting informal mediation of the partition, Theresa filed a Motion to Appoint a Special Master. On October 27, 2001, Bruce Miller was appointed as Special Master. On October 29, 2001, Theresa also moved for appointment of a custody evaluator. On November 9, 2001, Merlin moved for rehearing of the appointment of a Special Master.
After a status conference on November 30, 2001, the trial judge issued an Interim Order reiterating the appointment of Bruce Miller as Special Master among other issues. The order was signed December 27, 2001.
On February 20, 2002, Merlin filed a Petition for Partition of Community Property.[1] On March 26, 2002, Theresa's Petition for Divorce was granted, retroactively terminating the community of acquets and gains as of the date the petition was filed, August 8, 2001. On October 20, 2003, Bruce Miller filed his report regarding the partition of the Saacks' community.
On November 18, 2003, Theresa and Merlin went before the Domestic Hearing Officer for the Twenty-Fourth Judicial District Court for a hearing on Theresa's Rule for Child Support and Interim Periodic Spousal Support. The hearing officer recommended that child support for the two children be set at $1130.00 per month and interim periodic spousal support be set at $760.00, retroactive to August 8, 2001. *1133 Further, Merlin was ordered to maintain health insurance on both children, to pay 78% of uncovered extraordinary medical expenses, and to pay 78% of mandatory private school expenses. The Domestic Commissioner entered an interim order adopting the hearing officer's recommendations that same day, which was signed on December 2, 2003. Merlin filed an objection to the Domestic Commissioner's Order, which was set for hearing in December of 2003 and later continued, at mover's request, to March of 2004.
On December 10, 2003, Theresa filed her First Supplemental and Amended Sworn Detailed Descriptive List of Assets, Liabilities, and Reimbursements with regards to the community partition. On March 18, 2004, Merlin filed a Revised Descriptive List[2] and Traversal of the Special Master's Report. On March 23, 2004, Theresa filed a Second Supplemental and Amended Sworn Detailed Descriptive List and Traversal of the Special Master's Report.
On March 24, 2004 and July 20, 2004, trial of the Petition for Partition, Traversal of the Special Master's recommendations, and Merlin's Objection to the Hearing Officer's Recommendations and Interim Judgment was held. After hearing testimony from the Saacks as well as extensive testimony from Bruce Miller, who had been appointed Special Master, and Jay Golemi, who was retained as a forensic accountant to aid in evaluating Merlin's personal and business records, the trial judge partitioned certain elements of the couples' community.
Among many other details of the Saacks' community of acquets and gains, the trial judge found that the business known as Superior Building Services, an electrical installation contracting company, constituted community property, which was valued at $46,985.00. Superior's assets and liabilities were allocated to Merlin. Further, Merlin's claim for damages based on Theresa's use of community funds from the community business' bank account was denied. Additionally, the trial judge denied Merlin's request for an assessment against Theresa for the fair market rental value of the former marital home for the duration of Theresa's use and occupancy of the home. Finally, the trial judge adopted the Domestic Commissioner's Interim Judgment, which ordered Merlin to pay interim periodic spousal support of $760.00 for twelve months, with credit for payments that were made, and child support of $1,130.00 per month, 100% of the children's medical insurance premiums, 78% of uncovered extraordinary medical bills, and 78% of mandatory private school expenses, retroactive to August 8, 2001. Judgments were rendered on July 20, 2004 and signed on July 27, 2004. Merlin Saacks now appeals a portion of these judgments.
La. R.S. 9:2801 provides the procedure for judicial partitions of community property and settlement of claims after dissolution of the marriage. La. R.S. 9:2801(A)(4), which establishes rules for the allocation of assets and liabilities reads, in part:
The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.

*1134 (c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
* * *
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Kambur v. Kambur, 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99. A court of appeal may not set aside a trial court's finding of fact in absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989); Madere v. Madere, 93-610 (La. App. 5 Cir. 2/9/94), 632 So.2d 1180.
In light of these precepts, we will now address Merlin Saacks assignments of error: first, "[t]he Lower Court erred in the community property settlement when it allocated the insolvent community business to the husband, Merlin Saacks, after the wife had improperly withdrawn over $20,000.00 of working capital and business funds causing it's[sic] demise;" second, "[a]lthough properly filed Civil Code Article 2354 and Civil Code Article 2369.3 claims were lodged against the wife, the lower Court further erred when it refused to allow a full hearing on said issue and summarily dismissed the claims;" third, "[t]he Lower Court erred when it assessed child support and spousal support based upon earnings levels that formerly existed in the insolvent business prior to the time the wife withdrew the working capital of the business, causing the demise of the business;" and fourth, "[w]hether the court committed legal error in assessing rental value against a party when none was requested and failing to assess rent against a party whom rent was properly requested."
In his first and second assignments of error, Merlin argues in effect that the trial court erred in allocating the assets and, more importantly, the liabilities of the community business solely to him. Merlin specifically argues that Theresa's withdrawal of $20,000.00 from the business' bank account caused the demise of the now-defunct business and, therefore, the business, or more specifically, its liabilities should have been allocated solely to Theresa "for her negligent conduct in her bad faith efforts to remove working capital from the community enterprise." Further, Merlin contends that the trial judge "refused to consider any testimony or consider any evidence" to support Merlin's *1135 claims that Theresa had defrauded the community and failed to preserve the community enterprise by withdrawing $20,000.00 from the business account.
Here, the trial judge heard testimony from the Special Master, Bruce Miller, and an expert forensic accountant, Jay Golemi, on the valuation of Superior Building Services, Inc. ("Superior"), the commercial electrical contracting company at issue in the community partition. Merlin Saacks, a licensed electrician, operated the business on a day-to-day basis during its existence. He possessed the knowledge as well as the equipment necessary to conduct the company's business. Theresa Saacks, who is a licensed elementary education teacher, was not employed by the business or involved in operating the daily operations of the business.
Further, Bruce Miller and Jay Golemi testified that Superior was valued using the "book value," or liquidation value, of the business on the date the community terminated, which included valuation of the cash on hand, accounts receivable, and tools minus the accounts payable and taxes due. Superior was not valued as an ongoing concern because, by Merlin Saacks' admission at trial, the business was no longer operating at the time of trial.[3] Merlin Saacks testified that he collected 100% of the Superior's accounts receivable, totaling about $81,000, within five months of the community's termination date. Additionally, Merlin Saacks retained possession of the funds that he collected.
Furthermore, Bruce Miller and Jay Golemi both testified that Theresa Saacks' withdrawal of $20,000.00 from the business account did not cause the demise of the business. Both independent experts testified that the business accounts held sufficient cash to pay the business' debts on the date of the termination and, further, the collection of 100% of the business' receivables within five months infused the business with sufficient cash to continue to operate. Moreover, both experts attributed Superior's demise to Merlin Saacks' intentional non-payment of the business' bills and refusal to solicite new work after August 2001.
Moreover, the trial judge also heard testimony from Merlin Saacks regarding the demise of Superior. Although he admitted that he collected 100% of Superior's receivables by early 2002, he continued to state that his ex-wife's removal of money from the business' operating account rendered him unable to pay his creditors.
After reviewing the entire record, we cannot say the trial court abused its broad discretion in allocating Superior to Merlin Saacks. In cases such as this case, where there is a conflict in the testimony, reasonable evaluations of credibility and inferences of fact by the trier of fact will not disturbed on appeal. Based on the foregoing discussion, we find Merlin Saacks' first assignment of error to be without merit.
In his second assignment of error, Merlin Saacks alleges that the trial court erred in denying his claim for damages based on Theresa Saacks' fraudulent retention of community funds. La. C.C. Art. 2354 reads, "A spouse is liable for any loss or damage caused by fraud or bad faith in the management of the community property." Article 2369.3 of the Louisiana Civil Code provides in pertinent part:

*1136 A spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default or neglect.
La. C.C. art. 2369.3, comment (a) notes that this article imposes a higher standard of care in managing and maintaining former community property than the standard imposed during the marriage. The reason for the higher standard of care is that, after termination of the community property regime, the presumption that a spouse will act in the best interest of the community no longer exists. Knighten v. Knighten, 00-1662 (La.App. 1 Cir. 09/28/01), 809 So.2d 324, writ denied, 01-2846 (La.01/04/02), 805 So.2d 207.
The spouse alleging improper management bears the burden of proving that the former spouse failed to manage and prudently preserve the former community property prior to partition. Anding v. Anding, 32,084 (La.App. 2 Cir. 8/18/99), 740 So.2d 253; Drobnak v. Drobnak, 97-0021 (La.App. 1 Cir. 2/20/98), 708 So.2d 1162. La.C.C. art. 2369.3, comment (c) provides that a spouse who asserts a claim under this article is required to prove that the other spouse failed to act prudently in a manner consistent with the mode of use of the property under his control immediately prior to termination of the regime, not simply that he had former community property under his control. Bad faith is not required under La. C.C. art. 2369.3 because the spouse is "answerable for any damage caused by his fault, default or neglect." Gibson v. Gibson, 96-1472 (La.App. 3 Cir. 4/02/97), 692 So.2d 708, 710.
Our review of the record reveals that the trial judge denied Merlin Saacks' claim after a hearing including extensive testimony from independent experts regarding the community business. Importantly, the record reflects that Merlin Saacks did not seek to introduce additional evidence or present additional testimony to support his claims that Theresa had mismanaged community funds. Furthermore, Merlin Saacks did not contemporaneously object to the denial of his claims. This assignment is without merit.
In his third assignment of error, Merlin Saacks argues that the trial court erred when it assessed child support and spousal support based on his "earning levels that formerly existed in the insolvent business prior to the time the wife withdrew the working capital of the business. . . ." Merlin Saacks alleges that the trial court erred in finding that he was voluntarily underemployed and imputing to him an income of $78,000.00 for 2001.
To reiterate the procedural history of the support claims, Theresa Saacks included a request for child support and interim spousal support in her Petition for divorce, which was filed on August 8, 2001. On November 18, 2003, the Domestic Hearing Officer for the Twenty-Fourth Judicial District Court recommended that child support for the two children be set at $1130.00 per month and interim periodic spousal support be set at $760.00, retroactive to August 8, 2001. Further, Merlin was ordered to maintain health insurance on both children, to pay 78% of uncovered extraordinary medical expenses, and to pay 78% of mandatory private school expenses. The Domestic Commissioner entered an interim order adopting the hearing officer's recommendations that same day, which was signed on December 2, 2003. Merlin filed an objection to the Domestic Commissioner's Order, which *1137 was set for hearing in December of 2003 and later continued, at mover's request, to March of 2004 then to July of 2004. At the close of the July 20, 2004 hearing on Merlin Saacks' Objection to the Domestic Commissioner's Order, the trial judge adopted the Domestic Commissioner's Interim Judgment, which ordered Merlin to pay interim periodic spousal support of $760.00 for twelve months, and child support of $1,130.00 per month, 100% of the children's medical insurance premiums, 78% of uncovered extraordinary medical bills, and 78% of mandatory private school expenses, retroactive to August 8, 2001, with credit for payments that were made.
At the hearing on his Objection to the Domestic Commissioner's Order, Merlin averred that his income had significantly decreased after August of 2001. Although he did not submit personal income tax returns, he submitted income tax returns from his new business that reflect its income was -$4,500.00 in 2002 and -$2,500.00 in 2003. Merlin also testified that he had a "black flag hanging over his hair" since he did not pay his bills after his ex-wife removed money from his now-defunct business' operating accounts. He stated that this "black flag" prevented him from obtaining business contracts. Merlin Saacks admitted that, since 2001, he had received at least $170,000.00 in loans from banks and his parents. He also admitted that he had not used any of this money to pay the debts of his now-defunct business. Merlin Saacks also admitted that he did not pay interim spousal support or child support for the previous 2 ½ years because he was told "it would come out in the settlement."
Child support
The Court's Special Master, Bruce Miller, and Jay Golemi, the forensic accountant employed by Bruce Miller, however, both testified that Merlin Saacks' electrical contracting firm had enjoyed over four years of progressively increasing revenues that reached approximately $250,000.00 in 2000. Jay Golemi testified that he had compiled an "Adjusted Income Statement" for Merlin Saacks for 2001, which reflected income of $78,234.75. Further, Mr. Golemi opined that Merlin was capable of continuing to earn at least $78,000.00 per year. Bruce Miller reiterated that he believed that a person of Merlin Saacks' training, experience, and reputation was capable of earning around $80,000.00 per year.
In ruling on Merlin's objection, the trial court found that Merlin was voluntarily underemployed. The trial judge stated that he was inclined to find Bruce Miller and Jay Golemi's testimony more credible than that from Merlin Saacks. In fact, the trial judge found Mr. Saacks' testimony both "extraordinary" and "for the most part unbelievable." We cannot say that the trial judge's credibility determination was clearly wrong and, thus, it will not be disturbed.
Under La. R.S. 9:315(C)(6)(b), income includes potential income of a voluntarily unemployed or underemployed party. Thus, if a party is voluntarily unemployed or underemployed, child support must be based on a determination of his or her income earning potential. La. R.S. 9:315.11. Whether a party is voluntarily under/unemployed with respect to calculating child support is a question of good faith of the party to be cast with paying the child support obligation. Stephenson v. Stephenson, 37,323 (La.App. 2 Cir. 5/14/03), 847 So.2d 175; McDaniel v. McDaniel, 03-1763 (La.App. 3 Cir. 5/19/04), 878 So.2d 686.
In virtually every case where a parent's voluntary unemployment or underemployment was found to be in good faith, courts have recognized extenuating *1138 circumstances beyond that parent's control which influenced or necessitated the voluntary change in employment. A party is not deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. Voluntary underemployment is a fact-driven consideration. The trial court has wide discretion in determining the credibility of witnesses and its factual determinations will not be disturbed on appeal absent a showing of manifest error. Schuler v. Schuler, 04-91 (La. App. 5 Cir. 5/26/04), 876 So.2d 196.
Our review of the record reveals that Merlin was complacent with his job situation, and appears to have made minimal efforts to obtain new business for his electrical contracting firm. Further, we are presented no reason to disturb the assessment of Merlin's credibility, and find the trial court did not err in concluding that Merlin was voluntarily underemployed.
Under La. R.S. 9:315.11, if a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. When determining whether a spouse is underemployed for purpose of calculating a child support obligation, the court shall consider that spouse's earning capacity in light of all circumstances. Hansel v. Hansel, 00-1914 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, writ denied, 01-3365 (La.3/8/02), 811 So.2d 880.
In the present case, the wage earned prior to voluntary underemployment is the best estimate of earning potential. Here, Merlin earned $78,000.00 per year prior to his divorce. Using this wage, it is clear that Merlin's earning potential is the same as it was when the Domestic Commissioner set the child support amount. We find no error in the trial court's denial of Merlin's Objection to the Domestic Commissioner's Order with respect to the child support award.
Interim periodic spousal support
A spouse may be awarded an interim spousal support allowance based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. art. 113. Absent a pending demand for final spousal support, an award of interim spousal support allowance shall terminate upon the rendition of a judgment of divorce. La. C.C. art. 113. The spouse seeking interim spousal support bears the burden of proving his or her entitlement to such. Clark v. Clark, 34,314 (La.App. 2 Cir. 11/1/00), 779 So.2d 822, 825, writ denied, 00-3196 (La.1/12/01), 781 So.2d 563.
The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion. Clark v. Clark, 779 So.2d at 826; Thomey v. Thomey, 33,000 (La.App. 2 Cir. 4/7/00), 756 So.2d 698, 702. The trial court heard testimony from his independent experts on the financial condition and needs of the parties. After reviewing the entire record in this matter, we are unable to find that the trial court erred or clearly abused its discretion. Accordingly, we find no error in the trial court's award of interim periodic spousal support to Theresa Saacks.
In his final assignment of error, Merlin argues that the trial court erred in failing to award him a credit for the fair *1139 rental value of the community home during the time it was occupied by Theresa.
La. R.S. 9:374(C) reads, in pertinent part, that:
A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of La. R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.
Jurisprudence has interpreted this section to require that such an agreement or court order be made at the time use and occupancy is awarded; rental payments may not be retroactively assessed. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280. In Richard v. Richard, 00-08 (La.App. 5 Cir. 5/30/00), 762 So.2d 271, this court discussed the policy considerations behind La. R.S. 9:374(C):
The request for rent in this matter was made by Austin pending settlement of the community, post divorce. Therefore, after dissolution of their community, and until it is partitioned, Austin and Peggy continued to hold the property as owners in indivision, or, as co-owners. Anderson v. Anderson, 520 So.2d 1236, 1239 (La.App. 5 Cir.1988). In this situation, as has been made clear by the Supreme Court, La. R.S. 9:374 does not sidestep more general principles of co-ownership, but is applied in conjunction with the principles found in Civil Code articles 797 through 818  articles governing "ownership in indivision." Article 802, in particular, provides that one co-owner cannot prevent another co-owner from making use of the property. Rights of each party, therefore, spring not from another co-owner's mere use of the common property  here, the family home  but from the fact of ownership. And though one party's exclusive use of the property does give rise to an action for damages, the action only arises if, and when, a demand for shared use is made and refused. McCarroll, 701 So.2d at 1289-90. Applying this principle to divorced spouses who yet hold property in common, if rent in this situation is a form of damages, the Supreme Court has held that "[f]or the assessment of rent under La.R.S. 9:374(C), there must be an agreement between the spouses or a court order for rent contemporaneous with the award of occupancy." McCarroll, 701 So.2d at 1290. That is, "[r]ental payments may not be assessed retroactively unless otherwise agreed to by the spouses or ordered by the court . . . there must be an agreement between the spouses or a court order for rent contemporaneous with the award of occupancy." Lupberger v. Lupberger, 99-0144 at p. 3 (La. App. 4 Cir. 6/16/99), 738 So.2d 138, 140.
In the present case, the record reflects that neither party was actually granted exclusive use and occupancy of the home, although it is undisputed that Theresa and their children have occupied the home. In fact, Theresa moved for exclusive use of the home in her original petition but her motion was never heard and appears to have been inadvertently dismissed. Merlin's Motion for Rental Value was heard and denied on March 24, 2004, once the trial judge realized that there was no pending motion for exclusive use.
Further, there is no showing in the record that Merlin demanded and was refused occupancy so as to entitle him to rent. Finally, the record does not reflect an agreement between the parties to reserve the right to seek reimbursement. We find *1140 no abuse of discretion in the denial of his claim for reimbursement.
We note, however, that Theresa did not request reimbursement for loss of rental value when Merlin moved into the Saacks' rental property. Accordingly, we reverse that portion of the judgment assessing rental value against Merlin Saacks, but, in all other respects, we affirm the trial court's judgments of partition and support orders. Costs of this appeal are assessed against appellant, Merlin Saacks.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] On March 5, 2002, Theresa filed a sworn Detailed Descriptive List as ordered by the trial judge. The record, which was designated by appellant, Merlin Saacks, does not show that he filed a sworn Detailed Descriptive List within 45 days of his Petition for Partition as ordered by the trial judge.
[2] See footnote 1.
[3] At trial, Merlin Saacks admitted that he did not pursue new business for his company after his wife filed for divorce in August of 2001. He testified that he finished work on existing jobs that were bid but that he did not try to obtain new business or clients. He stated that he discontinued work under the name Superior Building Services by the end of 2001. He further admitted that he began a new electrical contracting company in 2002.