STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 1355

THE SUCCESSION OF LINDA PELLETTE

Judgment Rendered: **JUN 1 2 2020**

* * * * * *

On appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number P73158

Honorable Donald R. Johnson, Judge Presiding

* * * * * *

| | |
|---|---|
| Stephen C. Carleton<br>Victor R. Loraso, III<br>Carmen T. Hebert<br>Baton Rouge, LA | Counsel for Defendants/Appellants<br>Ryan Bettencourtt and Jason<br>Bettencourtt |
| Wendy J. Moran<br>Baton Rouge, LA | Counsel for Plaintiff/Appellee<br>Jerome Pellette |

* * * * * *

BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**GUIDRY, J.**

Appellants, Ryan Bettencourtt and Jason Bettencourtt, appeal a trial court judgment denying their claims for rental reimbursement and awarding co-owner and Appellee, Jerome Pellette, closing costs and certain other reimbursements upon reconventional demand. For the reasons that follow, we affirm in part, reverse in part, and vacate in part.

## FACTS AND PROCEDURAL HISTORY

Linda Hack Pellette died intestate on January 24, 1999, after having been married twice. Her first marriage to Raymond Bettencourtt ended in divorce in 1985. Of this marriage, two children were born, Ryan Bettencourtt and Jason Bettencourtt. Linda married a second time to Jerome Pellette on October 27, 1990. Of the second marriage, two children were born, Lindsey Pellette and Tender Pellette, who were both minors at the time of their mother's death. At the time of Linda's death, Ryan was 21 years old and Jason was 17 years old. Jerome, the surviving spouse, was appointed administrator of Linda's succession. On May 11, 2001, Jerome married Vicki Poirrier.

By a Judgment of Possession dated April 6, 2001, Jerome was placed in possession of an undivided one-half of the property belonging to the community of acquets and gains that existed between him and Linda. A part of that community included immovable property located at 4953 Parkforest Drive ("the home" or "the property") and a Bank One account, which are the subjects of the dispute herein.

The Judgment of Possession also recognized that Jerome was entitled to the usufruct of the portion of the community property formerly belonging to Linda for the remainder of his life or until remarriage. The other heirs, Linda's children, Ryan, Jason, Lindsey, and Tender, were entitled to the naked ownership, in equal shares, of the one-half of the community property formerly belonging to Linda's succession, subject to the usufruct of Jerome.

2

On September 30, 2016, Ryan and Jason filed a petition for partition in the succession proceedings, requesting that the property located at 4953 Parkforest Drive be partitioned. Ryan and Jason also requested any rental reimbursement due to them from Jerome. Jerome answered the partition, claiming that a co-owner is not entitled to rental payments. He also filed a reconventional demand against Ryan and Jason, requesting reimbursement for the mortgage he paid on the property and for expenses he incurred maintaining the property.[2] Jerome further sought reimbursement from Ryan for money allegedly withdrawn on July 24, 1999, from a Bank One account belonging to Linda's estate. Ryan and Jason answered Jerome's reconventional demand and filed exceptions raising the objections of prescription, no right of action, and no cause of action.

In connection with the trial, the parties entered a number of joint stipulations; the parties stipulated to a private sale of the property to Jerome, subject to any reductions ordered by the trial court related to the mortgage and expenses paid by Jerome and/or the rental claim of Ryan and Jason.

The trial in this matter was conducted over two days in September of 2017. On November 14, 2017, the trial court issued a judgment, which was the subject of a prior appeal to this court. See Matter of Succession of Pellette, 18-0728 (La. App. 1st Cir. 4/16/19), 2019 WL 1614718 (dismissing and remanding the appeal that arose from the November 14, 2017 judgment for want of appellate jurisdiction). Later, on June 18, 2019, the November 2017 judgment was amended.[3] The trial court ordered a private sale in accordance with the parties'

---

[2] Jerome filed the answer and reconventional demand individually and as the permanent natural tutor of Tender.

[3] We note that the appellee herein contends that the June 18, 2019 amended judgment lacks decretal language; specifically, the appellee asserts that paragraph 10 of 15 lacks the appropriate language. We disagree. A final, appealable judgment must contain decretal language, and must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. These determinations should be evident from the language of the judgment without reference to other documents in the record, as we believe

3

stipulation as to the value of the property, denied Ryan and Jason's rental reimbursement claim, and granted certain recoveries to Jerome. Ryan and Jason now appeal that judgment, and assign the following errors: 1) the trial court erred in denying their rental reimbursement claim and finding that a demand for occupancy could not be made during the usufruct; 2) the trial court erred in denying their rental reimbursement claim when Jerome had exclusive use of the property; 3) the trial court erred in awarding Jerome $5,686.00 in connection with a related succession asset, the Bank One account; 4) the trial erred in awarding Jerome fifty percent of his closing costs, filing fees, and recording fees in connection with the sale of the property; and 5) the trial court erred in awarding a percentage of insurance and property taxes to Jerome.

## STANDARD OF REVIEW

On legal issues, the appellate court gives no special weight to the factfinder's conclusions, but exercises its constitutional duty to review questions of law and renders judgment on the record. Chaisson v. Oceanside Seafood, 97-2756, p. 3 (La. App. 1st Cir. 6/29/98), 713 So. 2d 1286, 1288. However, the two-part test for the appellate review of a factual finding is 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Marietta Trust v. J.R. Logging Inc., 16-1136, p. 4 (La. App. 1st Cir. 5/11/17), 225 So. 3d 1144, 1147, writ denied, 17-1751 (La. 12/5/17), 231 So. 3d 631. If a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Mixed questions of law and fact are also subject to the

---

they are here. See Advanced Leveling & Concrete Solutions v. Lathan Company, Inc., 17-1250, p. 4 (La. App. 1st Cir. 12/20/18), 268 So. 3d 1044, 1046 (*en banc*).

manifest error standard of review. <u>Marietta Trust</u>, 16-1136 at p. 4, 225 So. 3d at 1147-1148.

**DISCUSSION**

**Rental Reimbursement**

In their first two assignments of error, the appellants essentially contend that their demands for occupancy both before and after Jerome's usufruct entitle them to rental reimbursement for Jerome's exclusive use of the property after the usufruct ended. Here, with Jerome as the usufructuary and Ryan and Jason as the naked owners,[4] we note the following: the rights and obligations of the naked owner are limited in comparison to those of the usufructuary. The naked owner can dispose of his naked ownership; however, he cannot affect the rights of the usufructuary. La. C.C. art. 603. The naked owner must not interfere with the rights of the usufructuary. La. C.C. art. 605; <u>Walker v. Holt</u>, 03-1722, pp. 5-6 (La. App. 3rd Cir. 9/29/04), 888 So. 2d 255, 258-259.

In addition, the use and management of the thing held in indivision is determined by agreement of all the co-owners. La. C.C. art. 801. Except as otherwise provided in Article 801, a co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it. La. C.C. art. 802. It is well established that a co-owner need not pay rent to another co-owner for his exclusive use of the co-owned property. <u>McCarroll v. McCarroll</u>, 96-2700, pp. 18-19 (La. 10/21/97), 701 So. 2d 1280, 1289. A co-owner in exclusive possession may be liable for rent, but only beginning on the date another co-owner has demanded occupancy and has been refused. <u>McCarroll</u>, 96-2700 at pp. 19-20, 701 So. 2d at 1290. However, even in these instances, the co-owner in possession cannot be enjoined from occupying the property or cultivating it. The remedy of the co-owner out of possession is by suit

---

[4] We recognize that Lindsey and Tender were also naked owners.

5

for a partition. Juneau v. Laborde, 228 La. 410, 418, 82 So. 2d 693, 696 (La. 1955).

In the matter before us, following the death of Ms. Pellette in 1999, Jason moved out of the family home within weeks of his mother's death; Ryan was not living at the home at the time of his mother's death. Afterwards, according to their testimonies, both Ryan and Jason made attempts to collect their belongings from the home. However, the locks were changed by Jerome, and Ryan and Jason were denied access to the home.[5]

Thereafter, the record shows that Ryan and Jason made requests to Jerome to visit with or pick-up their young sisters. In June of 2000, Ryan and Jason filed suit in family court seeking custody of their sisters, or alternatively, visitation.[6] The record also shows periodic communication between Jerome and Ryan regarding Ryan's and Jason's ownership interests in the home. At points during 2001 to 2004, the parties discussed the sale of Ryan's and Jason's ownership interests to Jerome.

By Jason's testimony at trial, which is primarily limited to the period during the usufruct, he and his brother, Ryan, were denied access to the home and denied visitation with their young sisters. Ryan, through his testimony, admitted that he supported "the situation of [Jerome's] living," as Jerome had expressed concerns of providing Lindsey and Tender with a stable home environment. Ryan testified that he expressed to Jerome that he was "okay" with Jerome using the house following the custody/visitation trial.[7] Ryan also admitted that he never demanded a key to the home and made no more "demand[s]" after the custody suit was filed

---

[5] Ryan and Jason testified that they picked up their belongings from the open carport or curbside.

[6] Jerome maintained custody of Lindsey and Tender. According to Jason, the suit was "not completed." Jerome inferred, however, that the suit was dismissed.

[7] In our opinion, it is clear from the record that Ryan also spoke on the behalf of Jason.

and the usufruct ended. According to Ryan, following the suit for custody, his and Jason's demands were exhausted.

Additionally, according to the testimonies of Jerome and his wife, Ryan and Jason never came to the home, were never refused entry to the home, and following the termination of the usufruct, never tried to the access the home or come over to visit with their sisters, Lindsey and Tender.

Here, while it is clear that Ryan and Jason made attempts to retrieve belongings from the home following the death of their mother, and made attempts to visit with their young sisters, these attempts were made during the period of the usufruct, where Jerome had the right of exclusive use of the property. A naked owner can never enter into the enjoyment of the use of the property until after the extinction of the usufruct. Melancon v. Garon, 14-1532 (La. App. 1st Cir. 4/24/15), 2015 WL 1882732, *2 (citing Theriot v. Terrebonne, 195 So. 2d 740, 743 (La. App. 1st Cir. 1967)). Therefore, Jerome could rightfully deny Ryan and Jason access to the home during the usufruct.

The usufruct terminated with Jerome's remarriage in May of 2001. See La. C.C. art. 890. However, following the termination of the usufruct, we can find no demand for occupancy made by either Ryan or Jason, which would entitle them to rental reimbursement. Instead, Ryan admitted through his testimony that no demands for occupancy were made following the usufruct. Likewise, we note that Ryan communicated to Jerome that he and Jason were supportive of Jerome using the home for the stability of their sisters, Lindsey and Tender.

Considering the evidence and testimony before us, we cannot say the trial court was clearly wrong in finding that neither Ryan nor Jason made a demand to occupy the home and were refused following the termination of the usufruct. Furthermore, when considering the rights and obligations of a usufructuary in comparison to those of a naked owner, we are led to the conclusion that a naked

7

owner is not entitled to a right of occupancy during the usufruct. Therefore, any demand for such, made during the period of the usufruct, would not entitle him to rental reimbursement. We find no merit in these assignments of error.

**Insurance and Property Taxes**

Ryan and Jason contend the trial court erred in awarding a percentage of the insurance and property taxes to Jerome because Jerome had exclusive use of the property. Thus, Ryan and Jason essentially contend that any award for the insurance and property taxes should have been offset by the value of Jerome's use of the property.

Louisiana Civil Code article 806 states:

A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.

If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.

Insurance and property taxes paid by a co-owner are necessary expenses pursuant to Article 806. See La. C.C. art. 527, Revision Comment (b). However, in the instant case, because Jerome had the enjoyment of the property, any reimbursement to which he is entitled is subject to a reduction. See Clark v. Simmons, 14-133, pp. 7-8 (La. App. 5th Cir. 12/23/14), 167 So. 3d 140, 143-144.

We hold that the trial court erred in its award to Jerome for the insurance and property taxes for which he paid. Jerome enjoyed the subject property exclusively for a significant amount of time, since May of 2001. Consequently, we conclude that the value of Jerome's exclusive enjoyment of the property far exceeds the stipulated amount of $910.97 that would be owed by each appellant herein for his percentage of the necessary expenses paid by Jerome. In our opinion, Jerome's

8

claim for the necessary expenses of insurance and property tax is entirely offset by his exclusive use and enjoyment of the property. Therefore, on this issue, we reverse the judgment of the trial court.

**Closing Costs**

In their fourth assignment of error, the appellants argue that the trial court erred in ordering them to reimburse Jerome for closing costs associated with the sale of the home. The appellants argue that closing costs were not demanded from Jerome either in his pleadings or at trial, and as such, an award for these costs amounted to a denial of due process.

We find that the trial court erred as a matter of law when it entered a judgment assessing all of the parties equally with the costs of closing, including the costs of filing and recording fees. The trial court may only grant relief warranted by the arguments contained in the pleadings and the evidence. In re Interdiction of Amoroso, 19-0987 (La. App. 1st Cir. 2/21/20), 2020 WL 862230, *2. Furthermore, due process requires adequate notice to the parties of the matters that will be adjudicated. Glover v. Medical Center of Baton Rouge, 97-1710, p. 3 (La. App. 1st Cir. 6/29/98), 713 So. 2d 1261, 1262.

Pursuant to La. C.C.P art. 1154, when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. In addition, La. C.C.P. art. 862 grants the trial court authority to render a final judgment granting the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. Nothing in Article 862, however, is intended to confer jurisdiction on a court to decide a controversy which the parties have not regularly brought before it. Ussery v. Ussery, 583 So. 2d 838, 841 (La. App. 2nd Cir. 1991).

9

In the instant case, the relief sought by the parties included a partition of the property and certain recoveries. Prior to trial, the parties agreed to a private sale of the property with Jerome purchasing from Ryan and Jason their ownership interests.[8] However, Jerome, as the purchaser of the property, never filed any pleading concerning the recovery of closing costs. Neither did Jerome make any declaration or request at trial for such costs—the record lacks evidence of anything concerning closing costs.

The character of an action is fixed by the pleadings filed by the parties. Ussery, 583 So. 2d at 841. Moreover, a judgment beyond the pleadings is a nullity. Domingue v. Bodin, 2008-62, p. 3 (La. App. 3d Cir. 11/5/08), 996 So. 2d 654, 657. In this matter, the trial court addressed issues beyond the scope of the pleadings. We therefore vacate that portion of the judgment, which assessed all of the parties equally with the costs of closing, including the costs of filing and recording fees.

**Bank One Account**

In response to Jerome's Bank One Account claim, Ryan and Jason filed peremptory exceptions of no right of action, no cause of action, and prescription. Allegedly, on July 24, 1999, Ryan withdrew funds from a Bank One account belonging to his mother's estate. However, a Judgment of Possession dated April 6, 2001 listed the Bank One account as property from the community. The trial court ruled in favor of Jerome, dismissing each of Ryan and Jason's exceptions and ordering the return of the bank account funds to Jerome in the amount of

---

[8] The parties may agree to a private sale prior to public sale. See La. C.C.P. art 4607; La. C.C. art. 811; Hebert's Holdings, L.L.C. v. Mouton, 97-1238 (La. App. 3rd Cir. 3/6/98), 709 So. 2d 983, writ denied, 98-1397 (La. 7/2/98), 724 So. 2d 738.

$5,686.00. On appeal, Ryan and Jason question the trial court's ruling, arguing that 1) the claim is prescribed and 2) the claim was not addressed at trial.[9]

We first address the issue of prescription, noting that La. C.C. art. 3499 provides, "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." Comment (b) of that article states that articles 3492-3498 of the Civil Code establish shorter prescriptive periods and that numerous other articles establish longer ones. See also Starns v. Emmons, 538 So. 2d 275, 277 (La. 1989). Further, Article 3502 provides, "[a]n action for the recognition of a right of inheritance and recovery of the whole or a part of a succession is subject to a liberative prescription of thirty years. This prescription commences to run from the day of the opening of the succession."

Ryan avers that Jerome's claim is a money claim, subject to a prescriptive period of three years, and thus, the claim is prescribed. However, considering the facts of this case, we find that the claim asserted by Jerome (individually and as tutor of Tender) for the return of the bank account funds is classified as a claim for inheritance under Article 3502. Such a claim for inheritance is subject to a prescriptive period of thirty years. Accordingly, we find that the claim is not prescribed.

This is not to say that the issue of returning the bank account funds was properly before the trial court so that it could render a judgment on the merits of the claim. The procedure for a trial in an ordinary proceeding is set out in La. C.C.P. art. 1631, *et seq.* Article 1632 provides for the presentation of evidence by the parties. Further, a plaintiff must prove his case before he can recover, and in order to prove his case, it is necessary that a certain amount of evidence be

---

[9] While the exception of prescription was urged for review on appeal, we note that the issues pertaining to the exceptions of no right and no cause of action were not urged by brief or otherwise. Therefore, we deem any appeal of the exceptions of no right of action and no cause of action abandoned. See Rule 1-3, Uniform Rules, Courts of Appeal.

presented. <u>Tri-City Finance Plan, Inc. v. Barbier</u>, 207 So. 2d 269, 272 (La. App. 1st Cir. 1968); <u>Fruge Aquafarms, Inc. v. Hicks</u>, 16-1001, p. 8 (La. App. 3rd Cir. 5/3/17), 218 So. 3d 1106, 1112.

In the instant case, the minutes reflect that the evidentiary hearing on expense issues began on September 5, 2017, and continued on September 29, 2017. On September 5, arguments were held on the peremptory exceptions filed by Ryan and Jason. The court deferred ruling on the "merits of the exceptions" until the end of the trial. Thereafter, at trial, the parties presented evidence on the "demand for occupancy" and the claim for rental reimbursement. However, no evidence was offered by either party on the merits of the claim for the return of the bank account funds.

Jerome's counsel argues that a separate hearing was held on November 9, 2017, which addressed the bank account claim. However, the record herein is devoid of a transcript from the November 9 hearing, and the court minutes pertinently read as follows:

> This matter came on for hearing for Clarity of Judgments. Present in Court: Mr. Stephen Carleton, counsel on behalf of the plaintiff, Ryan Betteneourt; and Ms. Wendra Moran, counsel on behalf of the defendant, Jerome Pellette. The parties clarified Mr. Pellette paid expenses before May of 2001 and after May of 2001 for the property in dispute. As to the Sam[']s Construction roofing repair completed August 25, 2008, the parties clarified the plaintiff's stipulated in the joint stipulation responsibility for a quarter share of that amount. No evidence was presented by either side for home preservation expenses beyond the stipulation as to the roof expense. Finally, the parties presented additional argument as to the dispute regarding the Bank One Account of $9,098.17. Whereupon, for oral reasons assigned, the Court made note of the parties respective positions to assist in the Court[']s ruling.

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. We further note that "[a] court may not consider exhibits filed in the record which were not filed into

evidence unless it is introduced and is admissible at the trial or hearing." <u>Landis</u> <u>Const. Co. v. State</u>, 15-1167, p. 3 (La. App. 1st Cir. 2/29/16), 199 So. 3d 1, 2 n.1.

The judgment on the merits here, based on the record before us, was rendered without the taking of any evidence. Even the November 9 court minutes do not indicate that *evidence was produced* by the parties on the merits of returning the bank account funds. Indeed, while there were arguments on the exceptions filed by Ryan and Jason in regards to Jerome's bank account claim, the claim on the merits was not otherwise litigated by the parties. Accordingly, we find that the ruling of the trial court on the merits of Jerome's reimbursement claim, ordering the return of the bank account funds, was without proper foundation. We therefore reverse that portion of the judgment.

## CONCLUSION

The rulings of the trial court, dismissing the appellants' demand for rental reimbursement and exception of prescription, are affirmed. The rulings of the trial court, awarding reimbursement for insurance and property taxes to the appellee and awarding reimbursement from the Bank One account to the appellee, are reversed. The portion of the judgment awarding closing costs to the appellee is vacated. Costs of this appeal are assessed equally to the two parties, Appellants, Ryan and Jason Bettencourtt, and Appellee, Jerome Pellette.

**AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART.**